COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-399-CR

 

 

PAUL WAYNE DAMRON                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In one
point, appellant Paul Wayne Damron appeals the trial court=s
requirement that he pay for a Secure Continuous Remote Alcohol Monitor (SCRAM)
as a condition of his community supervision associated with his felony driving
while intoxicated (DWI) conviction.  See Tex. Penal Code Ann. ' 49.04(a)
(Vernon 2003), ' 49.09(b)(2) (Vernon Supp.
2009).  We modify the trial court=s
judgment and affirm the judgment as modified.








Background Facts

A
Wichita County grand jury indicted Damron for DWI; the indictment alleged that
Damron had two previous convictions for that offense. Damron swore that he
was indigent and therefore received court-appointed counsel.








At a
pretrial hearing in May 2008, Damron=s
counsel told the trial court that Damron had tentatively agreed with the State
to a plea bargain that would include community supervision but that Damron
wanted to testify about his inability to pay for a SCRAM device, which was to
be one of the terms of the community supervision.[2]  Damron testified that he would not be able to
afford the $360 per month cost of the device.[3]  Specifically, he explained that he had a job
that paid him $9.50 per hour but that he was about to lose his job because the
business that he worked for was closing. 
He also testified that he had been paying past due child support and
owed approximately $20,000 for such support; that he pays bills for utilities,
groceries, car insurance, and gas; and that he owes money for medical
bills.  The trial court expressed
uncertainty about removing the SCRAM condition but told the parties that it
would consider Damron=s request to remove it.

Sometime
between the May 2008 hearing and August 21, 2008, the trial court told the
parties that it would not remove the SCRAM device as a condition of Damron=s
community supervision.[4]  On the morning of August 21, Damron filed a
written AObjection@ to the
SCRAM condition.  Then, on the same day,
as part of his plea agreement, Damron received admonishments from the trial
court about his rights, waived those rights, entered a judicial confession, and
pled guilty.[5]








The
trial court convicted Damron and placed him on community supervision for five
years.  Damron=s
community supervision includes the conditions that he wear a SCRAM device for
180 days, pay all costs for the SCRAM device to the monitoring company, and pay
other substantial fees and costs that are unrelated to the SCRAM device.

In
September 2008, Damron again objected to the SCRAM condition by filing a motion
to modify the terms of his community supervision.  The trial court heard that motion and Damron=s motion
for new trial during a hearing in October 2008.[6]  After the hearing, the trial court denied both
motions. Damron filed his notice of appeal.

Our Jurisdiction Over This Appeal








In one
point, Damron argues that the trial court abused its discretion by unreasonably
requiring him to pay the costs associated with the SCRAM device.[7]  The State Adoes not
contest@ Damron=s claim
that the trial court abused its discretion, but it argues that we do not have
jurisdiction over Damron=s appeal.

The requirements of rule of
appellate procedure 25.2

The
State contends that we do not have jurisdiction because Damron did not comply
with the rules of appellate procedure. 
Rule 25.2 states in part,

In a plea bargain caseCthat is, a case in which a defendant=s plea was guilty or nolo
contendere and the punishment did not exceed the punishment recommended by the
prosecutor and agreed to by the defendantCa defendant may appeal only: 

 

(A) those matters that were raised by written motion filed and ruled
on before trial, or 

 

(B) after getting the trial court=s permission to appeal.

 

Tex. R. App. P. 25.2(a)(2); see
Ex parte Reedy, 282 S.W.3d 492, 501 (Tex. Crim. App. 2009); Turley v.
State, 242 S.W.3d 178, 179B80 (Tex.
App.CFort
Worth 2007, no pet.) (mem. op.) (dismissing an issue without addressing its
merits because the trial court did not give the appellant permission to appeal
that issue and the issue was not raised by a written motion filed and ruled on
before trial).  The record establishes
that this is a plea bargain case and that the trial court has not given Damron
its permission to appeal; thus, our jurisdiction depends on whether Damron=s AObjection@ to the
SCRAM condition qualifies as a Awritten
motion filed and ruled on before trial.@  See Tex. R. App. P. 25.2(a)(2)(A).








At the
time of Damron=s plea, the trial court entered
an order certifying Damron=s right
to appeal based on his written objection. 
In December 2009, based on our initial review of the record, we abated
the case in part because it appeared to us that Damron may not have obtained a
ruling on his objection before trial. 
During the abatement, the trial court held a hearing, determined that
Damron had not complied with rule 25.2, issued written findings in that regard,
and amended its certification to state that this is Aa
plea-bargain case, and the defendant has NO right of appeal.@  The trial court=s
written findings relate, among other facts, 

$       
AIt is not disputed that
the issue of the SCRAM community supervision term was raised pretrial@;

 

$       
ABy July 10, 2008, the
trial court had informed the defendant that any community supervision would
include the SCRAM term. No written pretrial motion had been filed as of
the July 10, 2008 hearing@; and 

 

$       
AMinutes prior to the
entry of his guilty plea, the defendant filed a >written objection to
community supervision provision(s).=  At the
time the >objection= was filed, the trial
court had already announced its decision.@

 








We must
review the correctness of a trial court=s
certification of a defendant=s right
to appeal, and if we determine that the court=s
certification is not supported by the record, we must take appropriate
action.  See Chavez v. State, 183
S.W.3d 675, 680 (Tex. Crim. App. 2006); Dears v. State, 154 S.W.3d 610,
614B15 (Tex.
Crim. App. 2005); Morgon v. State, 185 S.W.3d 535, 538B39 (Tex.
App.CCorpus
Christi 2006, pet. ref=d) (holding that the trial court=s
certification was defective and dismissing an appeal without further
action).  After reviewing the record,
including the portions of the record filed after we issued our abatement order,
we conclude that the trial court=s second
certification of Damron=s right to appeal is incorrect
and that the court=s first certification is
correct, and we hold that Damron complied with rule 25.2(a)(2) because he
raised matters by a written motion filed and ruled on before trial.








Specifically,
we conclude that Damron=s AObjection@ was
ruled on before trial because the substance of the sole issue in the written
objectionCthe inclusion of the SCRAM termChad been
presented to the trial court through Damron=s
testimony before the objection was filed and the trial court ruled on the
inclusion of that term.  Although we have
not found authority directly on point, we cannot agree with the trial court
that under the circumstances of this case, rule 25.2(a)(2) required a further
ruling that simply reiterated the trial court=s
position that Damron was required to pay for the SCRAM unit after the written
objection was filed.[8]  See Montanez v. State, 195 S.W.3d
101, 104 (Tex. Crim. App. 2006) (explaining that a Atrial
court=s ruling
on a matter need not be expressly stated if its actions or other statements
otherwise unquestionably indicate a ruling@).

Our
holding that Damron complied with rule 25.2(a)(2) is supported by the court of
criminal appeals=s statement that the rules of
appellate procedure should prevent trivial issues from divesting appellate
courts of jurisdiction to consider the merits of criminal cases.  Few v. State, 230 S.W.3d 184, 187 (Tex.
Crim. App. 2007).  We should Anot
dismiss an appeal for a procedural defect whenever any arguable interpretation
of the Rules of Appellate Procedure would preserve the appeal,@ and we
should not divest a defendant of his or her right to appeal Aby
imposing requirements not absolutely necessary to effect the purpose of a rule.@  Id. at 189; see also Thomas v.
State, 286 S.W.3d 109, 113 (Tex. App.CHouston
[14th Dist.] 2009, no pet.) (citing Few and explaining that courts of
appeals should construe procedural rules reasonably, yet liberally).








The
State argues in its brief that Damron=s AObjection@ is
different from a Amotion@ under
rule 25.2(a)(2) because it was not an application for the court to rule.  The AObjection@ stated,
AThe
[SCRAM condition] of the order setting community supervision . . . is
unreasonable and the Defendant objects . . . .@ The
State has not cited (and we have not found) any authority distinguishing an Aobjection@ and a Amotion@ as to
the ability to establish jurisdiction under rule 25.2.  In the context of this case, Damron=s AObjection@
obviously related to his prior verbal request that he should not be ordered to
pay for the SCRAM device.  AMotions@ and Aobjections@ are
treated similarly in the appellate procedural rules and are defined alike.  See Tex. R. App. P. 33.1(a)(1)
(explaining that a complaint may be preserved through a timely Arequest,
objection, or motion@); Black=s Law
Dictionary 1106, 1178 (9th ed. 2009) (defining Amotion@ as a Awritten
or oral application requesting a court to make a specified ruling or order@ and
defining Aobjection@ as a Aformal
statement opposing something that has occurred, or is about to occur, . . . and
seeking the judge=s immediate ruling on the point@).  We hold that Damron=s AObjection@
qualifies as a motion under rule 25.2(a)(2).

For all
of these reasons, we hold that Damron complied with rule 25.2, that his appeal
is based on a written motion filed and ruled on before trial, and that we have
jurisdiction over the appeal on that basis.

Article 11.072>s habeas
corpus provisions








Next,
the State contends that we lack jurisdiction over this appeal because it
asserts that a challenge to a condition of community supervision must be filed
by an application for a writ of habeas corpus under article 11.072 of the code
of criminal procedure and not by a direct appeal.  Article 11.072 dictates the procedures for
seeking relief from a Ajudgment of conviction ordering
community supervision,@ but it does not explicitly
state that challenges to terms of community supervision cannot be prosecuted
through a direct appeal.  See Tex.
Code Crim. Proc. Ann. art. 11.072 ' 1
(Vernon 2005).

As
authority for its argument, the State principally relies on an unpublished
decision from the court of criminal appeals. 
See Beauchamp v. State, No. 254‑03, 2004 WL 3093227, at *4
(Tex. Crim. App. Sept. 22, 2004) (not designated for publication).  But as the State recognizes, unpublished
opinions from the court of criminal appeals have no precedential value, and we
cannot cite to or rely on such opinions as authority.  See Tex. R. App. P. 77.3.








We have
not found any other case from the court of criminal appeals in which that court
repeated its holding in Beauchamp that article 11.072 is the exclusive
avenue to challenge conditions of community supervision. Instead, without
discussing the effect of article 11.072, the court of criminal appeals recently
decided a direct appeal in which the only issue concerned the propriety of jail
time as a condition of community supervision. 
See Johnson v. State, 286 S.W.3d 346, 347 (Tex. Crim. App. 2009);
see also Ex parte Clore, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985)
(holdingCin a
case that was decided before the enactment of article 11.072 and that regarded
the court of criminal appeals=s
constitutional writ powersCthat the
defendant=s Aappropriate
remedy to challenge the conditions of probation [was] by appeal@).  We have also decided challenges to community
supervision terms in direct appeals.  See, e.g., Beech v. State, Nos. 02‑08‑00053‑CR,
02‑08‑00054‑CR, 2009 WL 673482, at *1B2 (Tex.
App.CFort
Worth Mar. 12, 2009, no pet.) (mem. op., not designated for publication).








While
article 11.072 allows for challenges to the legal validity of conditions of
community supervision, it also states that a challenge may not be made under
that article Aif the applicant could obtain
the requested relief by means of an appeal under . . . Rule 25.2, Texas Rules
of Appellate Procedure.@ Tex. Code Crim. Proc. Ann. art.
11.072 ''
2(b)(2), 3(a); see Ex parte Wilson, 171 S.W.3d 925, 928 (Tex. App.CDallas
2005, no pet.) (holding that a challenge to a community supervision condition
through an article 11.072 application was waived because the challenge was not
made through a direct appeal); Lopez v. State, 46 S.W.3d 476, 480 (Tex.
App.CFort
Worth 2001, pet. ref=d) (stating that we Aare
prohibited from hearing . . . a challenge to the validity of a condition of
community supervision unless . . . [an] appeal was taken directly from
the court=s ruling@)
(emphasis added).  We have held that
Damron may appeal under rule 25.2.  Thus,
we hold that article 11.072 does not prohibit Damron from challenging his SCRAM
term on direct appeal but rather requires him to do so, and we conclude that
article 11.072>s provisions do not defeat our
jurisdiction over this appeal.

The Merits of Damron=s Appeal

We
review the imposition of conditions of community supervision under an abuse of
discretion standard.  Belt v. State,
127 S.W.3d 277, 280 (Tex. App.CFort
Worth 2004, no pet.).  As relating to
community supervision conditions generally, the code of criminal procedure
states,

A judge may not order a defendant to make any payments as a term or
condition of community supervision, except for fines, court costs, restitution
to the victim, and other conditions related personally to the rehabilitation of
the defendant or otherwise expressly authorized by law.  The court shall consider the ability of the
defendant to make payments in ordering the defendant to make payments under
this article.

 

Tex. Code Crim. Proc. Ann. art.
42.12, ' 11(b)
(Vernon Supp. 2009) (emphasis added). 
And more specifically, in a DWI case, 

If a judge requires as a condition of community supervision that the
defendant participate in a prescribed course of conduct necessary for the
rehabilitation of the defendant=s drug or alcohol dependence condition, the judge
shall require that the defendant pay for all or part of the cost of such
rehabilitation based on the defendant=s ability to pay.

 

Id. art.
42.12, ' 13(d)
(emphasis added).








The
undisputed evidence that is summarized above shows that Damron is unable to pay
for the SCRAM condition.  Thus, because
the imposition of costs related to DWI rehabilitation must be Abased on
the defendant=s ability to pay,@ we hold
that the trial court abused its discretion by ordering him to pay for the
condition.[9]  Cf. Chauncey v. State, 837 S.W.2d 179,
184B85 (Tex.
App.CEl Paso
1992) (holding that the trial court did not err by ordering the defendant to
pay for daily alcohol and drug tests during his probation because the defendant
did not present evidence that he could not make the payments), aff=d, 877
S.W.2d 305 (Tex. Crim. App. 1994).








Because
we hold that the trial court erred by including the condition that Damron pay
for the SCRAM device when the evidence showed his inability to do so, we
sustain Damron=s sole point, and we delete the
condition that requires him to pay for the device.  See Belt, 127 S.W.3d at 281.  Because Damron has not contested the trial
court=s
requirement that he wear the SCRAM device, our opinion does not prevent the
trial court from requiring him to wear the device if it does so in a way other
than requiring him to pay the costs for it.

Conclusion

Having
sustained Damron=s only point, we modify the
trial court=s judgment to delete the
condition that he pay for the costs of the SCRAM device, and we affirm the
judgment as modified.  See Tex. R.
App. P. 43.2(b).

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, WALKER, and
MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]A SCRAM device is an
instrument that may be placed on an individual=s ankle to measure the
individual=s alcohol consumption
through vapors emitted by the individual=s skin.





[3]The SCRAM device also
requires a $60 set up fee.





[4]The record reflects that
by July 10, 2008Cwhen the trial court held
another pretrial hearingCthe trial court had
informed the parties of its decision to retain the SCRAM condition.





[5]The record contains a
document signed by Damron in which he purportedly waived his right to appeal;
the document is not signed by the trial court. 
Damron=s counsel has stated that
Damron did not intend to waive his appellate rights and that the waiver
document was supposed to be pulled from the packet of papers that were filed in
this case on the day that Damron pled guilty. 
The State=s attorney said that his
recollection about the day of Damron=s plea was Apretty much the same@ as Damron=s counsel had
represented.  The trial court has found
that Damron waived his right of appeal, but it stated during a hearing that it Aknew that Mr. Damron
wanted to appeal the issue of . . . having to wear the SCRAM device.@  Given the parties= statements and the trial
court=s statement, we hold that
Damron did not waive his right of appeal through the waiver document filed in
the trial court.  See Willis v. State,
121 S.W.3d 400, 402B03 (Tex. Crim. App. 2003)
(declining to enforce a nonbargained for and boilerplate waiver of the
defendant=s right of appeal); Alzarka
v. State, 90 S.W.3d 321, 324 (Tex. Crim. App. 2002) (same).





[6]During the October 2008
hearing, Damron testified that he had lost his job but that he had been
applying for other jobs.  He said that he
was receiving $235 per week in unemployment benefits and that his ex-wife, who
he lives with and who has medical problems, was receiving $620 per month in
disability benefits.  He said that he was
behind on paying his bills, that he was paying $335 per month in child support,
and that he had no way to pay for the $360 per month SCRAM cost.





[7]Damron does not contest
the trial court=s order that he wear the
SCRAM device; he only challenges the trial court=s requirement that he pay
for the device.





[8]There is no indication
that the trial court would have ruled any differently than it had ruled before
Damron entered his guilty plea if Damron had asked for an explicit ruling on
his written objection; the trial court maintained its ruling against Damron=s objection to paying for
the SCRAM device when Damron filed his posttrial motions.





[9]In a case in which the
evidence indicated that the defendant was not able to pay monthly restitution
expenses that the trial court had ordered, we held that the trial court
nonetheless did not err by ordering the payments because the record showed that
the trial court Aconsidered@ the defendant=s ability to make the
payments, as required by section 11(b) of article 42.12. Pennington v. State,
902 S.W.2d 752, 753B55 (Tex. App.CFort Worth 1995, pet. ref=d).  This case differs from Pennington because
section 13(d), unlike section 11(b), affirmatively requires that the costs
imposed in DWI cases must be based on the defendant=s ability to pay them and
not merely that the trial court shall consider the defendant=s ability to pay.