*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00508-CR

Joseph James **GENOVESI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B00-146-3
Honorable Steven B. Ables, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:     Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  July 14, 2010

AFFIRMED

This appeal stems from the trial court's adjudication of Appellant Joseph James Genovesi on an underlying charge of aggravated sexual assault for which Genovesi had originally been placed on deferred adjudication. The trial court adjudicated Genovesi and sentenced him to fifty years confinement. On appeal, Genovesi argues that he received ineffective assistance of counsel based on counsel's failure to object to the trial court's consideration of the victim–allocution statements prior to sentencing. We affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

On October 5, 2000, Genovesi entered a plea of guilty to three counts of aggravated sexual assault of a child, a first degree felony, and the trial court placed Genovesi on deferred adjudication probation for a period of ten years. Several years later, the State alleged Genovesi violated the terms and conditions of his probation. On July 10, 2009, during a hearing on the State's motion to adjudicate, Genovesi entered a plea of true to several, but not all, of the State's alleged violations. The trial court adjudicated Genovesi's guilt and sentenced him to fifty years confinement.[1]

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his sole appellate issue, Genovesi alleges he received ineffective assistance of counsel based on counsel's failure to object to the reading of unsworn victim–allocution statements prior to the assessment of punishment.

**A. Standard of Review**

A defendant is entitled to effective assistance of counsel under both the United States and Texas Constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp. 2009). In order to prove ineffective assistance of counsel on appeal, the appellant bears the burden to prove counsel's assistance fell below an objective professional standard of reasonableness and thereby prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). When reviewing an ineffective assistance claim, "an appellate court looks to

---

[1] To support a court's order to revoke deferred adjudication community supervision, the evidence need only show one violation of a defendant's terms of community supervision. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980). A plea of true to even one allegation is sufficient to support a revocation of deferred adjudication community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21 (Vernon Supp. 2009); *see Lewis v. State*, 195 S.W.3d 205, 209 (Tex. App.—San Antonio 2006, no pet.).

the totality of the representation and the particular circumstances of each case." *Thompson*, 9 S.W.3d at 813. To establish prejudice, an appellant must show, by a preponderance of the evidence, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (en banc) (per curiam).

**B. Texas Code of Criminal Procedure Article 42.03**

Following the adjudication, unsworn victim–allocution statements of Genovesi's daughters were read ***before*** the trial court assessed punishment.[2] Specifically, C.G. read her statement and then was placed under oath and questioned by the State. After the State rested, Tanyo Castro, the case worker for Genovesi's younger daughter, read the unsworn statement of M.G. Genovesi argues there is no reasonable basis for trial counsel's failure to object to the testimony in question. Furthermore, Genovesi points out that his younger daughter's statement was inadmissible because count three of the indictment did not allege her as a victim.[3]

Article 42.03, section 1(b) provides as follows:

(b) The court shall permit a victim, close relative of a deceased victim, or guardian of a victim, as defined by Article 56.01 of this code, to appear in person to present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim. The victim, relative, or guardian may not direct questions to the defendant while making the statement. The court reporter may not transcribe the statement. The statement must be made:

(1) ***after*** punishment has been assessed and the court has determined whether or not to grant community supervision in the case;
(2) ***after*** the court has announced the terms and conditions of the sentence; and
(3) ***after*** sentence is pronounced.

---

[2] Genovesi characterizes the children's statements as witness–allocution statements under Art. 42.03, and the State does not disagree with the characterization. The witnesses were not sworn before their statements were read, and their statements were not offered for purposes of punishment.

[3] Genovesi was originally placed on deferred adjudication based on his plea of guilty to count three in the State's indictment.

TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (Vernon Supp. 2009) (emphasis added); *Johnson v. State*, 286 S.W.3d 346, 347 (Tex. Crim. App. 2009). It is clear that article 42.03 requires that the victim-allocution statement be read *after* the sentence has been imposed and "*after* the court has announced the terms and conditions of the sentence." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (Vernon Supp. 2009) (emphasis original).[4] In *Johnson*, the court specifically noted that:

> [T]he purpose of article 42.03, 1(b) is to protect the trial judge from any implicit or explicit accusations that he could be or would be influenced by the victim-allocution statement. It is the appearance of possible influence, as much as the possible fact of influence, that the statute guards against.

*Johnson*, 286 S.W.3d at 351. The record reflects that trial counsel failed to object to the statements being made before sentence was pronounced in violation of article 42.03, § 1(b). TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (Vernon Supp. 2009); *see also Johnson*, 286 S.W.3d at 347; *Gifford v. State*, 980 S.W.2d 791, 792-93 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that the trial court should not have allowed the complainant's father to make a statement to the court regarding the father's views of the offense and the proper punishment before punishment was assessed). Not only were the statements made before sentencing, but the court reporter transcribed the testimony from both victims in violation of the statute. TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (Vernon Supp. 2009). We hold Genovesi satisfied *Strickland*'s first prong, that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687.

---

[4] Because we conclude that the failure to object to the reading of the victim-allocution statements prior to sentencing was deficient, we need not address whether failing to object to the reading of the impact statement of the child not named in the indictment was also deficient.

## C. Second Prong of *Strickland*

*Strickland* also requires a showing that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Jackson*, 973 S.W.2d at 956. When addressing the second prong of *Strickland*, we examine counsel's errors not as isolated incidents, but in the context of the overall record. *Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993). A harm analysis regarding an ineffective assistance of counsel claim, however, involves error of constitutional dimension. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *see also* TEX. R. APP. P. 44.2(a). Genovesi must, therefore, show that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. As the Court of Criminal Appeals explained in *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002), "[t]his means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *See also Bone*, 77 S.W.3d at 833. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 687. An appellate court's examination considers "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

### 1. Applicable Range of Punishment

We note the punishment assessed by the trial court was within the range of punishment for a first degree felony, that being imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000.00. TEX. PENAL CODE ANN. § 12.32 (Vernon Supp. 2009). This court has previously acknowledged that "trial courts appear

inclined to impose harsher sentences when a defendant's probation is revoked." *Eiland v. State*, 993 S.W.2d 215, 217 (Tex. App.—San Antonio 1999, no pet.); *see also Phillips v. State*, 887 S.W.2d 267, 270 (Tex. App.—Beaumont 1994, pet. ref'd) (99 years for aggravated sexual assault after adjudication based on failure to attend sex offenders program and failure to wear electronic monitoring). With this background we turn to the evidence before the trial court.

### 2. *Evidence Before the Trial Court*

The trial court also heard testimony from several witnesses, including Genovesi, his ex-wife, and his probation officer, in addition to the victim statements.[5] The State elicited testimony that Genovesi failed to comply with the terms of his probation for most of his probationary period. More specifically, when Genovesi was not incarcerated on other charges, the probation department was unable to locate him. Additionally, in violation of the terms of his probation, Genovesi continued to frequent bars, consume alcohol, took several trips out of town to casinos, and used the internet and texting for sexual purposes.

In addition to violating the terms of his probation, Genovesi intentionally deceived and manipulated the court and his probation officers. Genovesi claimed to have terminal cancer, but the State presented testimony, based on recorded telephone conversations, that Genovesi's cancer was in remission and he was using his cancer to manipulate the system. More specifically, the record showed that Genovesi had been in remission since August of 2008 "and that he continued hospice care and defraud[ed his care provider] and hospice by continuing like he was still cancerous and he wasn't." The trial court heard Genovesi's repeated denials of drinking, going to bars, and using the computer for sexual purposes in the face of clear evidence to the contrary. He also testified that he contacted his probation officers but "they refused to

---

[5] We note the appellate record erroneously contains the court reporter's transcription of the victim allocution statements. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03(1)(b), (Vernon Supp. 2009).

work with me." The State put on proof to the contrary. There is little doubt from the appellate record that the trial court was tired of Genovesi's deceit: "I have been very patient listening to the testimony—I don't know if the truth is in you. I just don't feel like that anything that you said has been truthful."

*3. Conclusion*

Prior to sentencing, the trial court not only had the testimony of the witnesses presented during the adjudication hearing, but also Genovesi's original plea of **guilty** to the indictment of aggravated sexual assault of his minor daughter. He was placed on deferred adjudication to participate in programs to reform his behavior. However, the testimony established that he did not fulfill his probation requirements, and was repeatedly in and out of jail. In sentencing Genovesi, the trial court was very explicit regarding the reasons for the sentence imposed, most important of which appeared to be Genovesi's deceit and complete disregard for the conditions of probation imposed by the trial court. Although the trial court alluded to the damage Genovesi caused his victims, the same conclusions could be reached from the very nature of the offenses described in the indictment.

Based on the record before us, we cannot say that counsel's performance prejudiced Genovesi's defense or that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687; *Jackson*, 973 S.W.2d at 956.[6]

---

[6] Although *Gifford v. State*, 980 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd), the case relied on by the appellant, did not conduct a harm analysis, when an appellant raises an issue of ineffective assistance of counsel the appellate court must conduct a two part analysis: (1) was error committed and (2) would the outcome have been different. *Strickland*, 466 U.S. at 687. Moreover, the cases citing *Gifford* for the same proposition, also apply a harm analysis. *See Aldrich v. State*, 296 S.W.2d 225, 260 (Tex. App.—Fort Worth 2009, pet. ref'd).

Moreover, we cannot say that counsel's actions undermined our confidence in the outcome. *See Strickland*, 466 U.S. at 687. Accordingly, we overruled this issue on appeal.

Rebecca Simmons, Justice

DO NOT PUBLISH