02-09-089&090-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00089-CR

NO. 02-09-00090-CR

 

 


 
 
 Sheree Leanne Applin a/k/a Sheree Leanne Aptlin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

------------

OPINION

------------

I.  Introduction

          Appellant
Sheree Leanne Applin a/k/a Sheree Leanne Aptlin appeals the trial court’s
judgments revoking her community supervision.  In two points, Applin contends
that the evidence is insufficient to establish that she violated terms of her
community supervision and contends that trial counsel was ineffective.  We will
affirm.

II.  Background

          On
September 22, 2008, Applin entered pleas of guilty to both causes involved in
this case—driving while intoxicated with felony repetition.  As part of her
plea-bargain agreements, Applin received seven-year sentences.  The trial court
probated the sentences for a period of four years, placing Applin on community
supervision.  Among the conditions of her community supervision, Applin
immediately served ten days in the Tarrant County Jail.  Her plea-bargain
agreements also included that Applin complete 160 hours of community service,
pay court costs and a $1,350 fine, and that Applin’s driver license be
suspended for two years and until she completed the DWI repeat offender
program.  Other conditions of her community supervision included that Applin
abstain from illegal substances, attend substance abuse treatment, and pay a
monthly probation supervision fee.  The terms of her plea-bargain agreements
also allowed for “other conditions to be set by [the trial] court.”

          Three
weeks after being placed on community supervision—on October 13, 2008—the trial
court supplemented Applin’s community supervision conditions and ordered her to
serve fourteen days’ confinement in the Tarrant County Jail.  Again, on
December 29, 2008, the trial court supplemented her community supervision
conditions by jailing her for 156 days.  On February 13, 2009, the State filed its
petitions seeking to revoke Applin’s community supervision.  In the three-page
petitions, the State alleged that Applin violated the conditions of her community
supervision by testing positive through urinalysis on December 12, 2008, for
hydrocodone, hydromorphone, and codeine; by testing positive for THC on
September 30, 2008; by failing to attend substance abuse treatment on October
7, 2008, and December 20, 2008; and by failing to pay her probation supervision
fees in October and December 2008.

          At
the hearing on the State’s revocation petitions, Applin pleaded “not true” to
all allegations.  Ermelindo Rolon, Applin’s community supervision supervisor,
testified that Applin failed to attend substance abuse treatment in October and
December 2008, and that Applin failed to pay her supervision fees in October
and November 2008.  Rolon also testified that Applin tested positive for
codeine, hydrocodone, hydromorphone, and THC.  Rolon said that Applin “did not
take probation seriously” and that she had “a nonchalant kind of attitude.” 
According to Rolon, the trial court amended Applin’s community supervision in
October 2008 to include the fourteen days’ jail time because Applin missed one
of her outpatient support appointments.  When asked whether the jail time was
in relation to Applin having tested positive for THC, Rolon said that at the
time of the October condition, he was not aware that Applin had tested positive. 
Rolon said, however, that he was aware of Applin testing positive for THC at
the time the trial court imposed the December jail-time condition.  Rolon
testified that Applin did not have good family support and that Applin’s “partner
recovery,” Applin’s mother, was a poor influence on Applin.  The State
questioned Rolon about Applin’s having tested positive for codeine,
hydrocodone, and hydromorphone.  Specifically, the State asked Rolon if Applin
tested positive “in one dose or separate doses?”  As Rolon began to answer,
defense counsel objected that Rolon was testifying to what someone at a
laboratory had told him and thus his statement would be hearsay.  Defense
counsel qualified his statement by stating that although the parties had
stipulated that these drugs had been detected in Applin’s urine, he would not
stipulate to the out-of-court statement regarding “one dose or separate
doses.”  The trial court sustained the objection.  Rolon said that Applin
admitted to having taken her mom’s cough syrup, which contained the codeine,
hydrocodone, and hydromorphone.

          Lori
Applin, Applin’s mother, testified that Applin took cough syrup when she was
sick that had been prescribed to either Lori or Lori’s husband, that Lori’s
husband administered the cough syrup to Applin, and that Applin never saw the
bottle.  Lori said that no one was aware at the time Applin was sick that the
prescription cough medicine contained codeine, hydrocodone, or hydromorphone. 
Applin’s father also testified at the hearing and admitted he was aware that
Applin had tested positive for codeine, hydrocodone, hydromorphone, and THC. 
He said that he was also aware that Applin did not finish her substance abuse
treatment.  He said that Applin’s failures were due to her being “probably a little
careless” and that he would be willing to be Applin’s partner in recovery if
the trial court continued Applin’s community supervision.

          Applin
testified that she had smoked marijuana seven days after the trial court placed
her on community supervision.  She said that she had missed one substance abuse
session because she had mistaken which day she was to attend, but that she
missed another because the counselor “refused” her.  She said that she did not
intentionally consume codeine, hydrocodone, or hydromorphone.  And Applin also
testified that she had failed to pay her fees, but that she did not have the
money because she had lost her job while she was serving the jail time in
October.

          The
trial court found that Applin violated each of the State’s allegations except
for failure to pay the October fee and revoked Applin’s community supervision. 
The trial court sentenced Applin to the seven years’ confinement in each of the
two cases originally pleaded to.  The sentences are to run concurrently.  This
appeal followed.

III.  Revocation of Community Supervision

In
her first point, Applin contends that the trial court abused its discretion by
revoking her community supervision.  Applin argues that the evidence is
insufficient to prove that she violated terms of her community supervision.  The
crux of Applin’s argument is that the trial court had already subjected her to
confinement for the alleged violations of her community supervision; thus,
citing double jeopardy, Applin contends that the trial court erroneously used
the “same violation as a basis for revoking her probation and sentencing her to
the penitentiary” as it did when it imposed its additional conditions in
October and December 2008.  Therefore, Applin argues, the trial court now seeks
to “punish [Applin] yet again for the same violation[s].”  We disagree.

A.      Community
Supervision Conditions

“Community
supervision” is the placement of a defendant by a court under a continuum of
programs and sanctions, with conditions imposed by the court for a specified
period during which a sentence of imprisonment or confinement, imprisonment and
fine, or confinement and fine, is probated and the imposition of sentence is
suspended in whole or in part.  See Rohret v. State, 41 S.W.3d 218, 219–20
n.4 (Tex. App.—Dallas 2001, no pet.).  Under this paradigm, and like in this
case where the plea-bargain agreement called for community supervision allowing
for conditions to be set by the trial judge, the trial judge determines the
conditions of community supervision and may alter or modify the conditions at
any time.  See Tex. Code Crim. Proc. art. 42.12, § 11(a) (Vernon
2004).  The trial judge may impose any reasonable condition that is designed to
protect or restore the community, protect or restore the victim, or punish,
rehabilitate, or reform the defendant.  Id.  An award of community
supervision is a quasi-contractual privilege, not a right.  Speth v. State,
6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  And the terms or conditions of
community supervision are terms of the agreement entered into between the trial
court and the defendant.  Id.  These terms are capable of being changed
by the trial court in the course of the community supervision time frame.  Id.
at 534–35.

The
conditions of community supervision may include a number of requirements,
including submitting a defendant in a felony case to a term of confinement for
no longer than 180 days in county jail.  Tex. Code Crim. Proc. art. 42.12, § 12(a);
see also Grodis v. State, 921 S.W.2d 502, 505–06 (Tex. App.—Fort
Worth 1996, pet. ref’d) (recognizing that a trial judge has the authority to
impose jail time as an additional condition of probation even in a plea-bargain
case).  Thus, the trial court retains authority to impose confinement in jail
as a condition of community supervision “at any time during the supervision
period.”  Johnson v. State, 286 S.W.3d 346, 351 (Tex. Crim. App. 2009).  And
unless prohibited by law, the trial judge “may do so for any reason and perhaps
for no reason.”  Id.  Even if community supervision is revoked, the
trial judge is not required to give a defendant credit for time spent in
confinement as a condition of community supervision; whether to do so is within
the trial court’s discretion.  Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)
(Vernon Supp. 2004–05); Ex parte Walker, 150 S.W.3d 429, 431–32 (Tex.
Crim. App. 2004).

In
this case, there are no specific fact findings as to why the trial court
imposed the jail-time conditions in October and December 2008.  But even
assuming that the infractions that led to these conditions of community
supervision serve in part as the same foundation that supports the State’s
petition for revocation, we conclude that there is no double jeopardy issue.  Indeed,
under Texas law a trial court can impose jail-time conditions “for any reason
and perhaps for no reason” at “any time during the supervision period” and not
credit that time to a sentence suspension that is eventually revoked; thus, we
hold that a trial court does not err by imposing conditions of jail time for
violations of community supervision and also finding true that these violations
occurred for revocation purposes.  Johnson, 286 S.W.3d at 351; see
U.S. v. Whitney, 649 F.2d 296, 298 (5th Cir. 1981) (declining to extend
double jeopardy clause protections to parole and probation revocations
proceedings); Ex parte Peralta, 87 S.W.3d 642, 644–46 (Tex.
App.—San Antonio 2002, no pet.) (reasoning that probation revocation
proceedings are not designed to punish a criminal, but to determine whether
probationer has violated conditions of parole; thus, double jeopardy does not
apply to such proceedings); Salinas v. State, 1 S.W.3d 700, 701–702
(Tex. App.—Amarillo, pet. ref'd) (noting that neither probation nor parole
revocation hearings constitute a stage of a criminal prosecution for double
jeopardy purposes).  To do so would thwart the purpose behind community
supervision; namely, “restore the community, protect or restore the victim, or
punish, rehabilitate, or reform the defendant” while at the same time
suspending the defendant’s true sentence for the crime that they have actually
been convicted of.  Tex. Code Crim. Proc. art. 42.12, § 11(a).  Thus, the
question we will next address is whether the trial court abused its discretion
when it revoked Applin’s community supervision.

B.      Sufficient
Evidence to Support Revocation

We
review an order revoking community supervision under an abuse of discretion
standard.  Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984);
Cherry v. State, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet.
ref'd).  In a revocation proceeding, the State must prove by a preponderance of
the evidence that the defendant violated the terms and conditions of community
supervision.  Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993);
Cherry, 215 S.W.3d at 919.  The trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony, and we
review the evidence in the light most favorable to the trial court’s ruling.  Cardona,
665 S.W.2d at 493; Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim.
App. [Panel Op.] 1981); Cherry, 215 S.W.3d at 919.  If the State fails
to meet its burden of proof, which in this instance is by preponderance of the
evidence and not beyond a reasonable doubt, the trial court abuses its
discretion in revoking the community supervision.  Cardona, 665 S.W.2d
at 493–94.  Our law is well settled that a defendant’s voluntary judicial
confession to violating the terms of her community supervision is, by itself,
sufficient to support the decision to revoke.  See, e.g., Wade v. State,
83 S.W.3d 835, 839–40 (Tex. App.—Texarkana 2002, no pet.) (defendant’s
confession to failing to pay fines and fees, without explanation of inability
to pay, was sufficient to support trial court's decision to revoke community
supervision).  Furthermore, the decision whether to continue or revoke
community supervision is within the trial court’s discretion.  Id.

In
this case, Applin’s community supervision supervisor testified that Applin had
tested positive for codeine, hydrocodone, hydromorphone, and THC:  all
violations of Applin’s community supervision conditions.  The supervisor also
testified that Applin failed to attend the classes described in the State’s
petitions to revoke and that Applin had failed to pay multiple fees.  Applin
herself admitted that she smoked marijuana and that she had taken prescription
cough syrup.  She also admitted that at least one of the violations, missing
her support group meeting in October, was her “fault.”  Viewing the evidence in
the light most favorable to the trial court’s ruling and recognizing that the
State need only prove that Applin violated her conditions by a preponderance of
the evidence as to any one condition imposed in the community supervision
arrangement, we hold that the trial court did not err by finding Applin had
violated conditions of her community supervision.  Thus, we overrule Applin’s
first point.

IV.  Effective Assistance of Counsel

          In
her second issue, Applin contends that her trial counsel was ineffective
because he did not object to multiple statements that appear to be hearsay; he
stipulated to the contents of a drug test; and he did not “make any meaningful
argument [on her behalf].”  We hold that the record does not support the claim
that Applin’s representation at the revocation hearing was ineffective.

We
apply a two-pronged test to ineffective assistance of counsel claims.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001).  To establish ineffective
assistance of counsel, an appellant must show by a preponderance of the
evidence that his counsel’s representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that,
but for counsel’s deficiency, the result of the trial would have been
different.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 62–63.  There is no requirement
that an appellate court approach the two-pronged inquiry of Strickland
in any particular order or even address both components of the inquiry if the
defendant makes an insufficient showing on one component.  Strickland,
466 U.S. at 697, 104 S. Ct. at 2069.

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  The issue is whether
counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel's conduct fell within a wide range of reasonable
representation.  Salinas, 163 S.W.3d at 740; Mallett, 65 S.W.3d
at 63.  A reviewing court will rarely be in a position on direct appeal to
fairly evaluate the merits of an ineffective assistance claim.  Thompson,
9 S.W.3d at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

          In
this case the record is insufficient to establish that trial counsel failed to
conduct himself within the wide range of reasonable representation.  It appears
to this court that counsel’s strategy was to appeal to the trial court’s
discretion and ask the court to assign to Applin a new partner in recovery—her
father—and to continue community supervision rather than revoke the suspension
of her sentences.  Given the evidence that Applin had violated multiple
conditions of her community supervision, this court cannot say that counsel’s
tactic was not reasonable under the circumstances.  We hold that Applin has
failed to overcome the presumption that trial counsel’s actions were consistent
with sound trial strategy.  See Thompson, 9 S.W.3d at 813–14.  We
overrule Applin’s second point.

V.  Conclusion

          Having
overruled both of Applin’s points, we affirm the trial court’s judgments.

 

 

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.

 

MCCOY, J. concurs without opinion.

 

PUBLISH

 

DELIVERED:  April 14, 2011




 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00089-CR

NO. 02-09-00090-CR

 

 


 
 
 Sheree Leanne Applin a/k/a Sheree Leanne Aptlin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

 

DISSENTING
OPINION

----------

          I
cannot join the majority opinion for several reasons.  I respectfully dissent
from the majority’s statements that

even assuming that
the infractions that led to these conditions of community supervision [periods
of incarceration] serve in part as the same foundation that supports the State’s
petition for revocation, we conclude that there is no double jeopardy issue. 
Indeed, under Texas law a trial court can impose jail-time conditions “for any
reason and perhaps for no reason” at “any time during the supervision period” and
not credit that time to a sentence suspension that is eventually revoked; thus,
we hold that a trial court does not err by imposing conditions of jail time for
violations of community supervision and also finding true that these violations
occurred for revocation purposes.[1]

          I
do not understand what this means.  Does it mean that it is permissible to confine
a probationer for no reason because she will not get credit against her
sentence anyway?  When a person is placed on community supervision, that person
does not remove herself from constitutional protections to become a person
subject to the whims and caprices of the trial judge.[2]  In
determining whether a person previously placed on community supervision will
suffer incarceration through revocation, a trial court is bound by
constitutional guarantees of due process:

          The Due
Process Clause of the Fourteenth Amendment imposes procedural and substantive
limits on the revocation of the conditional liberty created by probation.  Probationers
have an obvious interest in retaining their conditional liberty.  The State
also has an interest in ensuring that revocation proceedings are based on
accurate findings of fact and the informed exercise of discretion, which avoid
the unnecessary interruption of a successful effort at rehabilitation and
provide for the safety of the community.  In Morrissey v. Brewer, the
United States Supreme Court held that due process applies to parole
revocations.  Commenting on the condition of one on parole, the Court noted:

          Though the
State properly subjects him to many restrictions not applicable to other
citizens, his condition is very different from that of confinement in a
prison.  He may have been on parole for a number of years and may be living a
relatively normal life at the time he is faced with revocation.  The parolee
has relied on at least an implicit promise that parole will be revoked only if
he fails to live up to the parole conditions.  In many cases, the parolee faces
lengthy incarceration if his parole is revoked.

          In Gagnon
v. Scarpelli, the Supreme Court held that the procedures outlined in Morrissey
for parole revocation should also apply to probation proceedings.

 

          To meet the
requirements of due process, the final revocation of probation must be preceded
by a hearing, where the probationer is entitled to written notice of the
claimed violations of his probation, disclosure of the evidence against him, an
opportunity to be heard in person and to present witnesses and documentary
evidence, a neutral hearing body, and a written statement by the fact finder as
to the evidence relied on and the reasons for revoking probation.  As we said
in Ex parte Hale, “the Constitution of our country has been interpreted
to protect persons who are released (on community supervision), from
reincarceration without due process of law.”

          Accordingly,
due process requires that reincarceration occur only after the disclosure of
evidence against the defendant.  Within this right to disclosure of evidence
afforded by due process, we can infer the requirement that revocation may not
occur when it is based solely on perjured testimony.  Because habeas review is
appropriate for denials of fundamental or constitutional rights, the applicant’s
claim that his community supervision was revoked solely on perjured evidence,
and therefore without due process of law, is cognizable under the habeas
jurisdiction of this court.[3]

          The
Due Process Clause of the Fourteenth Amendment provides that no State may “deprive
any person of life, liberty, or property, without due process of law.”[4]  The
touchstone of due process is fundamental fairness.[5]  Accordingly,
no State may deprive any person of the conditional liberty created by community
supervision unless the State employs procedures that are fundamentally fair.[6]  In
particular, where, as in Texas, the factfinder, if it finds a violation of the
conditions of community supervision, nevertheless has discretion to continue
the community supervision, the probationer “is entitled [by due process] to an
opportunity to show not only that he did not violate the conditions [of his
probation], but also that there was a justifiable excuse for any violation or
that revocation is not the appropriate disposition.”[7]

          It
is well established that 

          Texas law
gives a trial court “broad discretion” in creating community supervision
conditions.  Specifically, “[t]he judge may impose any reasonable condition
that is designed to protect or restore the community, protect or restore the
victim, or punish, rehabilitate, or reform the defendant.”  But the court’s
discretion is limited.  If a trial court imposes an invalid condition, an
appellate court may delete it from the trial court’s judgment.

          A condition
of probation is invalid if it has all three of the following
characteristics:

                   (1)  it has no
relationship to the crime;

 

(2)  it relates to
conduct that is not in itself criminal; and

 

          (3)  it
forbids or requires conduct that is not reasonably related to the future
criminality of the defendant or does not serve the statutory ends of probation.

          A community
supervision “condition is not necessarily invalid simply because it affects
[the defendant’s] ability to exercise constitutionally protected rights.”  A
condition that is “reasonably related to the purposes of probation” is
permissible.  “Reasonably related” hinges on three factors:  “(1) the
purposes sought to be served by probation; (2) the extent to which
constitutional rights enjoyed by law-abiding citizens should be accorded to
probationers;  and (3) the legitimate needs of law enforcement.”[8]

          As
this court has explained, “[T]he trial court’s broad authority to create community
supervision terms does not extend to imposing terms that violate a defendant’s constitutional
rights as balanced with the goals of the defendant’s probation.”[9]  Surely
liberty is a fundamental constitutionally protected right.  When a trial court
amends a defendant’s conditions of community supervision, the trial court must
act within constitutional boundaries.  When a trial court orders incarceration
as a condition of community supervision, the record must show that the
condition is reasonably based on the conduct of the defendant and the aims of
community supervision and that the defendant’s constitutional rights of notice,
rebuttal and explanation, objection, and representation by counsel were not
abridged.

          When
a trial court imposes conditions of community supervision, whether as original
conditions or pursuant to amendment, a defendant must be afforded the
opportunity to challenge them.  If the defendant is not given an opportunity to
object when the condition is imposed, there is no forfeiture of the complaint,
and the defendant may raise that complaint for the first time on appeal.[10]

          A
defendant is entitled to be represented by counsel at sentencing because
substantial rights of a defendant can be affected at sentencing.[11]  It
follows, then, that a defendant is entitled to be represented by counsel when
conditions of community supervision are amended to make them more onerous
because the defendant’s substantial rights of liberty, payment of restitution, or
preservation of a complaint that may invalidate the amendment or affect the
trial court’s ability to revoke community supervision are affected.[12]

          This
court has previously addressed the issue of revocation of community supervision
on a ground already heard and ruled on by the trial court before the revocation
hearing.  In Rains v. State, we held that it was a denial of due process
to hear an allegation of a violation of community supervision and continue the
defendant on community supervision but later revoke the community supervision
on the basis of the violation previously considered.[13]  We
quoted Rogers v. State,[14] an
opinion of the Texas Court of Criminal Appeals,

The probationer who
has been returned to probation after a hearing regardless of the procedural
label, retains the valuable liberty of probation and the due process protection
of the Fourteenth Amendment (of the United States Constitution) and (article I)
Section 19 (of the Texas Constitution).

                    This
protection includes the fundamental requirement that the probation, recently
returned, not be taken away arbitrarily . . . [.]  It would be the
epitome of arbitrariness for a court first to conduct a hearing on alleged
violations and exercise its discretion to return the probationer to probation
(whether by a ‘continuance of the hearing’ or by a ‘continuance
of the probation’), and then decide several months later to exercise its
discretion in the opposite fashion by revoking the probation without any
determination of a new violation.  (Emphasis added.)[15]

The
Rogers court had held

that by his actions
and oral instructions modifying the conditions of probation, the trial judge
exercised his discretion and determined to continue appellant’s probation on
June 26, 1980; having done so, he was without authority to revoke appellant’s
probation on September 26, 1980 in the absence of allegations and proof of a
subsequent violation.  Appellant was therefore denied his right to due process
of law.  The order revoking his probation is set aside and the cause is
remanded.[16]

Since
article 42.12, section 21(b) of the code of criminal procedure was clarified,
it is undisputed that when a violation of a condition of community supervision
is alleged and heard by the trial court, there are only four things a trial
court can do.  Article 42.12, section (21)(b) provides,

          At any time
during the period of community supervision the judge may issue a warrant for
violation of any of the conditions of the community supervision and cause the
defendant to be arrested.  Any supervision officer, police officer or other
officer with power of arrest may arrest such defendant with or without a
warrant upon the order of the judge to be noted on the docket of the court.  A
defendant so arrested may be detained in the county jail or other appropriate
place of confinement until he can be taken before the judge.  Such officer
shall forthwith report such arrest and detention to such judge.  If the
defendant has not been released on bail, on motion by the defendant the judge
shall cause the defendant to be brought before the judge for a hearing within
20 days of filing of said motion, and after a hearing without a jury, may
either continue, extend, modify, or revoke the community supervision.[17]

          Once
the trial court has either continued, extended, modified, or revoked the
community supervision, the trial court is precluded from further action
regarding that allegation.  The trial court may not subsequently revoke community
supervision based on the allegation that previously resulted in the trial court’s
continuing, extending, or modifying community supervision.

          In
the case now before this court, although we do not know why the trial court
imposed the jail-time conditions in October and December 2008, the majority
bases its holding on the trial court’s discretion to amend the conditions of
probation to impose jail time at any time during the supervision period “for
any reason and perhaps for no reason.”[18] 
And, according to the majority, it is of no import that Appellant was revoked
for the very reasons for which she was incarcerated in October and December
because she is not entitled to credit for the time that she was incarcerated as
a condition of community supervision.  Apparently it is also of no import that
Appellant’s community supervision was revoked while she was in jail for the
December incarceration condition.  What new violation did she commit while she
was in jail?  Apparently, that also is of no import because under the
majority’s holding, despite contrary and controlling precedent, the trial court
can act as arbitrarily and capriciously as the trial court chooses.

          Respectfully,
I suggest that the majority misunderstands the concept of due process.  A
defendant is entitled to due process whenever his or her liberty is in
jeopardy.  Did the trial court afford Appellant a hearing before the October
and December incarcerations?  Did she have notice of the accusations against
her?  Was she given notice of the hearings so that she could be present at any
hearings?  Did she have counsel?

          In
arguing that the trial court abused its discretion in revoking her community
supervision, Appellant has couched her arguments as double jeopardy violations
and insufficiency claims.  If the majority bases its decision on the fact that
Appellant calls her argument a double jeopardy as opposed to a due process
violation, the majority allows form to triumph over substance and,
additionally, sets the stage for a claim of ineffective assistance of counsel.

Appellant
also raises a sufficiency claim, and she argues here, as she did below, that
she was unable to pay the November community supervision fees because she had
lost her job when she was incarcerated in October.  The law is well established
in Texas that

          [a]t a
community supervision revocation hearing, the inability to pay restitution is
an affirmative defense for a defendant to prove.  Once the issue of inability
to pay is raised, the burden of proof shifts to the State to prove that
appellant’s failure to pay was intentional.[19]

The
State offered no evidence to challenge Appellant’s testimony of inability to
pay.  The State must prove its allegations, including ability to pay, by a
preponderance of the evidence.

Additionally,
the majority states that Appellant cannot claim credit for the time that she
was in jail as a condition of community supervision because the trial court is
not required to award the credit, relying on article 42.03, section (2)(a) of
the code of criminal procedure.[20] 
But the trial court gave her credit for time served:  “They do run
concurrently, and you get credit on the sentences for the time that you have
already served in custody.”  It is well established that in a
criminal case, unlike a civil case, the oral pronouncement of sentence controls
over the written judgment:

A trial court’s
pronouncement of sentence is oral, while the judgment, including the sentence
assessed, is merely the written declaration and embodiment of that oral
pronouncement.  When the oral pronouncement of sentence and the written
judgment vary, the oral pronouncement controls.[21]

For
all the reasons discussed above, I must respectfully dissent.

 

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  April 14, 2011









[1]Majority op. at 7–8.





[2]See Ex parte Dangelo,
Nos. 02-09-00266-CR, 02-09-00268-CR, 2010 WL 5118650, at *3 (Tex. App.—Fort
Worth Dec. 16, 2010, pet. filed) (op. on reh’g).





[3]Ex parte Carmona,
185 S.W.3d 492, 495–96 (Tex. Crim. App. 2006) (citations omitted).





[4]U.S. Const. amend. XIV.





[5]Gagnon v. Scarpelli,
411 U.S. 778, 790, 93 S. Ct. 1756, 1763 (1973); Webb v. State, 161
Tex. Crim. 442, 278 S.W.2d 158, 160 (1955).





[6]Black v. Romano,
471 U.S. 606, 610, 105 S. Ct. 2254, 2257 (1985).





[7]Id. at 612, 105 S. Ct.
at 2258.





[8]Briseño v. State,
293 S.W.3d 644, 647–48 (Tex. App.—San Antonio 2009, no pet.) (citations
omitted).





[9]Dangelo, 2010
WL 5118650, at *3 (citations omitted).





[10]Rickels v. State,
108 S.W.3d 900, 902 (Tex. Crim. App. 2003).





[11]Casey v. State,
924 S.W.2d 946, 949 (Tex. Crim. App. 1996).





[12]See id.





[13]Rains v. State,
678 S.W.2d 308, 310 (Tex. App.—Fort Worth 1984, pet. ref’d).





[14]640 S.W.2d 248 (Tex. Crim.
App. 1981).





[15]Rains, 678 S.W.2d
at 310 (quoting Rogers, 640 S.W.2d at 252).





[16]Rogers, 640 S.W.2d
at 251.





[17]Tex. Code Crim. Proc.
Ann. art. 42.12, § 21(b) (Vernon Supp. 2010) (emphasis added).





[18]Majority op. at 8.





[19]Greathouse v. State,
33 S.W.3d 455, 458 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (citations
omitted).





[20]See Tex. Code
Crim. Proc. Ann. art. 42.03, § 2(a) (Vernon Supp. 2010).





[21]Ex parte Madding,
70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (citation omitted).