Ivan **JOHNSON**, Appellant

v.

**The STATE of Texas.**

No. PD–1187–07.

Court of Criminal Appeals of Texas.

June 17, 2009.

Christopher M. Gunter, Austin, for Appellant.

Cheryl Nelson, Asst. District Atty., LLano, Jeffrey L. Van Horn, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and HOLCOMB, JJ., joined.

Appellant asks whether a trial judge has the discretion to impose jail time as a condition of community supervision immediately after he has heard unsworn, un-cross-examined victim-allocution statements that they wanted appellant to go to jail.[1] The answer is no. The pertinent statute is both clear and explicit: Article 42.03 requires that the victim-allocution statement be read *after* the sentence has been imposed and "*after* the court has announced the terms and conditions of the sentence."[2] This error was not harmless. We therefore reverse the court of appeals, which had held that error, if any, was harmless because the trial court retained authority to modify and amend the conditions of probation at any time during the period of community supervision.[3]

## I.

In this case, appellant was charged with two counts of indecency with a child. The jury acquitted him of the count involving Savannah, but convicted him of the count involving Brittany. The jury then assessed his punishment at five years' imprisonment and a fine of $5,000, but further recommended that both the fine and the imprisonment be probated and that appellant be placed on community supervision. The trial judge accepted the jury's punishment verdict and imposed the "standard" conditions of community supervision, including sex-offender registration. After the judge completed his oral pronouncement of the sentence and community supervision conditions,[4] he permitted the mothers of both children to give an oral

---

1. Appellant's sole ground for review is:

   The court of appeals erred in holding that a trial court can, under Article 42.12 § 12(c) of the Code of Criminal Procedure, modify the conditions of a defendant's probation to require 180 days in jail after victim allocution under Article 42.03 § 1(b) of the Code of Criminal Procedure.

2. Tex.Code Crim. Proc. art. 42.03, § 1(b)(2) (emphasis added).

3. *Johnson v. State*, 240 S.W.3d 76, 79 (Tex. App.-Austin 2007) ("The court below was and remains authorized to impose jail time as a condition of appellant's community supervision at any time during the five-year supervision period. Under the circumstances, if the court's determination to impose the jail time condition was made after the victim statements were made, it was at most harmless error.").

4. The record shows that the trial court completed his sentencing before the allocution statements.

   Court: This trial began on Monday, the 25th of September. It is concluded today, which is September 28th with the jury assessing

allocution statement in open court pursuant to Article 42.03, § 1(b). Brittany's mother also read Brittany's statement out loud. Then the trial judge read a statement written by Savannah out loud, even though appellant had been acquitted of molesting her.[5]

Immediately thereafter, the trial judge imposed additional conditions of probation, including the requirement that appellant sell his home [6] and that he serve 180 days in the county jail. Appellant objected; he filed a bill of exceptions because Article 42.03 prohibits the court reporter from recording victim-allocution statements; [7] and he obtained an adverse ruling from the trial court.[8] He properly preserved error.

## II.

The court of appeals correctly noted that Article 42.03 allows "a victim statement only after sentencing in order to alleviate any risk that the statement might affect

punishment at five years probation and a fine of $5,000, probated also. Know of any legal reason why we shouldn't pronounce sentence, [defense counsel]?

Defense: No.

Court: State?

State: The State has no reason.

Court: Then it is the sentence of this Court that you be placed on probation for a term of five years and a fine of $5,000 that will be probated also. You will be placed upon the standard conditions of probation and the ones [that] apply to sex offenders. You'll also have to register as a sex offender.

. . .

So that will be the sentence of the Court.

5. When reading the punishment charge to the jury, the trial judge had admonished the jury that they "cannot consider the evidence about the other girl, [Savannah] that y'all did not find him guilty of." The court of appeals noted, "In light of appellant's acquittal on count one, one might question whether [Savannah] was a victim within the meaning of article 42.03. Appellant does not raise this issue, and we express no opinion on the matter." *Johnson*, 240 S.W.3d at 78 n. 2.

6. Appellant did not object to this condition because the evidence at the punishment hearing showed that he had already moved away. Defense counsel told the jury that "he's going to sell the home, sell his house. He has no intention of ever going back to Sandy Harbor."

7. Tex.Code Crim Proc. art. 42.03, § 1(b) ("The court reporter may not transcribe the [victim's post-sentencing] statement").

8. Appellant's counsel objected as follows:

Defense: Judge, before the victims and their mothers were allowed to allocute, the law requires that you impose sentence before allocution takes place, and you did impose sentence earlier, and you did not impose a condition of probation of jail. It is improper for the Court to sit—not only sit and listen to it, but you actually read one of the victim's statements. And to then come in after that and re-impose sentence and—

Court: I didn't impose the terms and conditions of probation, though. I didn't impose any terms and conditions of probation at that point in time.

Defense: Well, we object to—we object to you imposing a condition of 180 days after you allowed the victims to allocute and you yourself read one of the victim's statement. That is totally what—that's exactly what the law is designed to prevent is for you from being swayed by what may have been inadmissible evidence and then go back and *sentence the defendant and we object to that.*

Court: And I think the Court presumes that—the appellate court presumes that the trial court does not consider inadmissible evidence, but this Court sat through the whole trial and heard all of the evidence that was in the trial, which clearly included what I read and what basically was stated. I mean, the Court could logically deduce most of what was read in that victim impact statement. That did not influence this Court to determine to sentence him to 180 days in the county jail because I had not imposed what conditions of probation I was going to impose. I just read that's what the jury did and they recommended it be probated.

the partiality of the fact finder at the punishment phase."[9] This statute is not ambiguous or difficult to understand. The statute says that the victim's statement "must be made ... after the court has announced the terms and conditions of the sentence; and after sentence is pronounced."[10] Only after the entire sentencing procedure is complete[11]-when it is not possible for anyone to think that unsworn, uncross-examined testimony could affect the trial judge's sentencing-may the victim deliver a statement to the defendant, the court, and the public. The term "after sentence is pronounced" does not mean that a first sentencing is a prelude to a second sentencing after the victim-allocution statement.

It is widely acknowledged by commentators that victim-allocation statements are to have "no effect" upon the jury or judge's decision making.[12] What does "no effect" mean? Does it mean that the trial judge may not increase the literal sentence, but he may add whatever new terms and conditions he thinks appropriate based upon the unsworn, uncross-examined victim-allocution statements? No. The whole purpose of requiring that these statements be made after the sentencing stage is complete is to protect the trial judge and the justice system from charges of partiality or any suggestion that these unsworn, uncross-examined statements can or will sway the sentencing authority in any respect whatsoever.

The timing of a victim's allocution statement was obliquely addressed by two members of this Court in a concurring

---

9. *Johnson*, 240 S.W.3d at 78.

10. Tex.Code Crim Proc. art. 42.03, § 1(b) & (b)(2) & (b)(3).

11. *See Gifford v. State*, 980 S.W.2d 791, 793–94 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (finding reversible error when the defense attorney failed to object to the victim's father's unsworn victim-allocation statement given before the trial judge assessed punishment, and stating that, under Article 42.03, "the legislature has severely limited the use and impact of the statement by requiring that it be made *after punishment has been assessed*.").

12. *See* 43 George E. Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 38.84 (2d ed.2001) (victim allocation "is intended to have no effect on decisions made in the criminal process"); D. Mark Elliston, 2 Texas Practice Guide: Criminal Practice and Procedure § 25:49 (2007) ("An oral victim [allocution] ... is an opportunity for the victim to vent his or her feelings.... The statement is not evidence and ... is intended to have no effect on decisions made in the criminal process"); Ken Anderson and John Bradley, Texas Sentencing § 10.2[b][6] (5th ed. 2007) ("After a judge has pronounced sentence or imposed conditions of community supervision, a victim may appear in person and tell the judge the victim's views about the offense, the defendant, and the effect of the offense on the victim."); Andrew L. Johnson, *Sentence Modification in Texas: The Plenary Power of a Trial Court to Alter Its Sentence After Pronouncement*, 38 St Mary's L.J. 317, 358–60 (2006) (noting that victim-allocation statements are "one-sided affairs that may not be transcribed" and provide "the crime's victims an ability to address the court after the sentence is pronounced.").

As one commentator explained, the original victim allocation bill, House Bill 520, was intended

to allow crime victims to give such a statement before sentence pronouncement. However, there was concern expressed at the legislative hearings that victim allocution statements might have an impact on sentencing. Legislators amended the proposed Bill by allowing allocution only after sentence pronouncement. Thus, the legislature intended to place victim allocution statements after the trial judge's pronouncement of the sentence to avoid any chance that the statement would affect the sentence given.

Johnson, *Sentence Modification in Texas*, 38 St Mary's L.J. at 360 (footnotes omitted).

opinion in *State v. Aguilera*,[13] and directly addressed by two other judges in a dissenting opinion in *Aguilera*.[14] Although four members of the Court have previously stated that a trial judge commits error if he changes, modifies, or alters his sentence or the conditions of community supervision immediately after hearing a victim-allocution statement,[15] this is an issue of first impression for the Court as a whole.[16]

The court of appeals avoided this issue by holding that it was at most harmless error because the trial court retained authority to modify or amend the conditions of probation at any time during the period of community supervision.[17] There are two problems with this conclusion.

First, the trial judge did not modify or amend the conditions of community super-vision. Indeed, the trial judge said that he was "imposing" jail time as a part of the "terms and conditions of probation;" he did not state that he was "amending" or "modifying" his original probation conditions.[18] The "180 days in jail" condition was made part of the original written judgment and was signed on the same day as the original sentencing. The only intervening event between the original pronouncement of sentence and conditions of community supervision and the pronouncement of the "180 days in jail" condition was the victim-allocution statements asking for the appellant to go to jail. After the defense attorney objected to the imposition of this post-allocution condition, the trial judge stated that he would modify the sentence to delete this condition if the defense could show him that it was illegal.[19]

---

**13.** 165 S.W.3d 695, 699, 703 (Tex.Crim.App. 2005) (Cochran, J., concurring, joined by Price, J.) (stating that a trial judge's decision to resentence a defendant would be "illegal" if it "was based upon a statutorily prohibited consideration of the victim impact sentence," but noting the Court could not address that question because it was not presented in the State's appeal).

**14.** 165 S.W.3d at 706 (Keasler, J., dissenting, joined by Hervey, J.) ("[The] 'Legislature specifically enacted Article 42.03 to allow victim statements only after sentencing in order to alleviate any risk that the statement would affect the partiality of the fact finder at the punishment phase' ") (quoting *Garcia v. State*, 16 S.W.3d 401, 408 (Tex.App.-El Paso 2000, pet. ref'd)).

**15.** Here, as in *Aguilera*, the fact that the modification of appellant's conditions of community service came immediately on the heels of the trial court's reading of the victim's allocution statement appears more than fortuitous. As Judge Keasler noted in his *Aguilera* dissent:

This statement defies credibility. It is remarkably coincidental that the judge chose to reduce [the defendant's] sentence right after hearing the victim's statement. I cannot condone this type of behavior. It seems an obvious attempt to circumvent Art. 42.03.
165 S.W.3d at 706 (Keasler, J., dissenting).

**16.** In *Aldrich v. State*, —— S.W.3d ——, No. 2-05-303-CR, 2008 WL 5057647, at *29-31 (Tex.App.-Fort Worth Nov.26, 2008, no pet. h.), the Fort Worth Court of Appeals held that it was harmful error, in violation of article 42.03, for the victims to give unsworn victim-allocution statements before the trial court assessed punishment. *See also Gifford*, 980 S.W.2d at 793-94 (ineffective assistance of counsel when counsel failed to object as victim's father gave an unsworn allocution statement before punishment was assessed).

**17.** *Johnson*, 240 S.W.3d at 79; *see* note 3 *supra*.

**18.** *See* note 8 *supra*.

**19.** The trial judge stated:

I'll tell you what we'll do. I'm going to leave my sentence intact. You can file-you can file a legal motion to show me that I can't do that legally. And if I can't do that legally, then I'll file a judgment nunc pro tunc and amend the conditions of probation where he doesn't have to do 180 days.

■ Second, the court of appeals's "no harm, no foul" reasoning fails to acknowledge the "any reason except a prohibited one" rule. The trial court does indeed retain authority to impose confinement in jail as a condition of community supervision "at any time during the supervision period." Unless prohibited by law, he may do so for any reason and perhaps for no reason. But just as a judge may not impose jail time as a condition of community supervision solely because of the defendant's race,[20] he may not impose jail time as a condition of community supervision for any other statutorily prohibited reason. If a litigant is prohibited from making peremptory challenges based on a venireman's race, it is constitutional error for him to do so; it is of no moment that there might be other valid reasons for striking that venireman if the party did, in fact, make his strike based on race. If the trial judge is not permitted to amend the conditions of probation based on the victim's allocution statements, it is of no moment that he could have later amended those same conditions based on a valid reason.

### III.

■ We do not doubt the sincerity of the trial judge in this case. He stated, on the record, that he did not modify appellant's sentence because of any influence caused by the reading of the victim-allocution statements.[21] But the purpose of article 42.03, § 1(b) is to protect the trial judge from any implicit or explicit accusations that he could be or would be influenced by the victim-allocution statement. It is the appearance of possible influence,

as much as the possible fact of influence, that the statute guards against.

Although the trial judge erred by violating the express terms of article 42.03, we are confidant that the honorable judge will do what he promised to do if he knew that his imposition of the "180–days–in–jail" condition was illegal: Delete it from the judgment. If the trial judge finds that appellant is a less than perfect probationer, he may always amend the conditions of community service to include jail time as long as that condition is not inextricably connected to the victims' allocution statements asking for jail time.

We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings consistent with this opinion.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

Before the victims' statements were made in this case, the trial judge orally imposed (1) the sentence, (2) the standard conditions of community supervision, and (3) the sex-offender conditions of community supervision. After the victims' statements, the judge imposed additional conditions of community supervision. Because the law allows a trial judge to impose new conditions of community supervision at any time, and the trial judge in this case stated that he was not influenced by the victims'

20. *See Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (although a prosecutor is ordinarily entitled to exercise his peremptory strikes for any rea-

son, he may not challenge jurors solely on account of their race).

21. *See* note 8 *supra.*

statements, I would hold that the trial judge committed no error.

The precise language of the victim-allocution statute is important, but the Court never quotes it. Article 42.03 does not, in fact, say that any victim-allocution statements must be made after the trial judge announces the conditions of community supervision.[1] But even if the statutory language were construed to encompass conditions of community supervision that are part of the judgment, we must also consider the effect of the statute that actually does control community supervision.

The community supervision statute contains a general provision that allows the trial judge to alter or modify the conditions of community supervision "at any time, during the period of community supervision."[2] Though the statute provides that any condition imposed be "reasonable," it does not contain any language requiring a new factual basis for imposing a new condition.[3] A more specific provision in the statute allows the trial judge to "impose confinement as a condition of community supervision . . . on placing the defendant on supervision or at any time during the supervision period."[4]

"At any time" is broad, unambiguous language. Its plain meaning includes events occurring on the same day that the judgment is pronounced. Indeed, the purpose section of the community supervision statute indicates an intent to confer the broadest possible flexibility on a trial judge in overseeing a person's community supervision:

> It is the purpose of this article to remove from existing statutes the limitations, other than questions of constitutionality, that have acted as barriers to effective systems of community supervision in the public interest.[5]

This broad grant of authority would seem to include the authority to impose additional conditions of community supervision, even when the announcement of those conditions follows on the heels of an orally pronounced judgment, and victim-allocution statements made pursuant to article 42.03.

The Court contends that the 180–days–in–jail condition was not an amendment to the original conditions of community supervision because it was contained in the original written judgment.[6] But our case-law says that the oral pronouncement of

---

**1.** Article 42.03 provides that a victim allocution statement *must* be made:

> (1) after punishment has been assessed and the court has determined whether or not to grant community supervision in the case;
> (2) after the court has announced the terms and conditions of the sentence; and
> (3) after sentence is pronounced.

TEX.CODE CRIM. PROC art. 42.03, § 1(b). The Court claims that article 42.03 is "unambiguous," but, contrary to *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991), the Court applies the statute to "conditions of community supervision," though that term does not appear in the statute. Article 42.03 says only that statements must be made after the decision on whether to *grant* community supervision is made, after the terms and conditions of the *sentence* have been announced, and after *sentence* is pronounced. In the

same chapter, the Legislature defined the term "sentence," and we have relied upon that definition to hold that the term "sentence" does *not* include the conditions of community supervision. *Speth v. State*, 6 S.W.3d 530, 532, 532 n. 4 (Tex.Crim.App. 1999)("The sentence and the conditions of community supervision are each separate parts of the 'judgment.'" Citing TEX.CODE CRIM. PROC art. 42.02).

**2.** TEX CODE CRIM PROC. art. 42.12, § 11(a).

**3.** *See id.*

**4.** *Id.*, § 12(c).

**5.** TEX.CODE CRIM PROC. art. 42.12, § 1.

**6.** Court's op. at 350.

sentence controls over the written judgment,[7] and the oral pronouncement in this case was facially complete at the time it was made. The 180–days–in–jail condition was not part of the trial court's original, oral pronouncement of judgment. In any event, the court of appeals's harm analysis seems correct: the trial court had the power to modify conditions of probation at any time, so it makes little or no difference whether, technically, the trial judge modified the judgment or amended the conditions.

Relying by analogy upon *Batson v. Kentucky*,[8] the Court contends that a trial court cannot impose jail time as a condition of community supervision "for any other statutorily prohibited reason." [9] But the Court reads into the statute something that is not there. No statute prohibits a trial court from amending the conditions of probation based upon a victim-allocution statement. What the Court does here is impose a nonstatutory, prophylactic rule designed to implement what it sees as the purpose of the victim-allocution statute.[10] It is questionable whether a *Batson*-type rule, which proscribes conduct that directly violates the United States Constitution,[11] should apply to a nonconstitutional, nonstatutory, prophylactic rule designed to effectuate the purpose of a statute.

Not only does the Court impose a *Batson*-type rule with far less justification than in the *Batson* context, but the rule imposed is in fact far more sweeping than *Batson*. Under *Batson's* three-pronged approach, when the party alleging a *Batson* violation establishes a prima facie case, the opposing party has the opportunity to offer a race-neutral reason for the strike, and if one is given, then the moving party has the burden of showing intentional discrimination.[12] But the Court's *Batson*-like rule has only one prong: once the defendant establishes a prima facie case, the Court imposes an irrebuttable presumption of impropriety. The Court claims that it does not doubt the sincerity of the trial judge when he specifically stated that the victim-allocution statements did not affect his decision, but the Court finds the trial judge's statement to be irrelevant to its truncated *Batson*-like analysis. A neutral explanation would be relevant to a true *Batson* inquiry, especially when accompanied by objective facts in the record. Here, the trial judge gave specific reasons that support his statement that he was not influenced by the victim-allocution statements: he remarked that he had not yet imposed the specific conditions he intended to impose and that he could have logically deduced from the evidence most of what was read in the victim statements. And the record reflects that the trial judge imposed another post-allocution condition of community supervision that no one claims was a result of the victim-allocution statements: the sale of appellant's home.[13]

**7.** *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim.App.2005).

**8.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**9.** Court's op. at 351.

**10.** The Court holds that the whole purpose of Article 42.03 is to avoid the appearance of judicial partiality. But the legislative intent in enacting the statute related not to the appearance of partiality but to the actual fact of partiality. *See State v. Aguilera*, 165 S.W.3d 695, 706 (Tex.Crim.App.2000)(Keasler, J. dissenting)(quoting *Garcia v. State*, 16 S.W.3d 401, 408 (Tex.App.El Paso 2000, pet. ref'd.)).

**11.** 476 U.S. at 86–87, 106 S.Ct. 1712.

**12.** *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).

**13.** The Court claims that appellant did not object to this condition because "the evidence at the punishment hearing showed that he had already moved away." Court's op. at 348

As article 42.12, § 1 explains, the legislature intended to give trial courts broad authority to determine what conditions of community supervision were appropriate. The Court, however, imposes a judicially-created prophylactic rule that restricts a trial court from doing just that. I respectfully dissent.

### DISSENTING OPINION

KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

I strongly disagree with the decision rendered by the majority. First, the plain language of Article 42.03, Section 1(b)—which we are bound to follow unless ambiguity or absurdity arises [1]—reveals that the statute's applicability to community supervision is not, by any means, a foregone conclusion.[2]

Next, even assuming that Article 42.03, Section 1(b) does apply, I believe that the trial judge did not err by imposing 180 days confinement as a condition of Ivan Johnson's community supervision immediately after hearing the victim allocutions. Article 42.12, Section 11(a) allows a trial judge to "alter or modify" the conditions of a defendant's community supervision "at any time[ ] during the period of [ ] supervision." [3] Section 12(a) of Article 42.12 authorizes a trial judge, in felony cases, to impose, as a condition of community supervision, a term of confinement not exceeding 180 days.[4] A trial judge may order confinement as a condition of supervision when "placing the defendant on supervision or at any time during the supervision period." [5] Article 42.03, Section 1(b) guards against bias at sentencing by prohibiting a judge from hearing victim allocutions before imposing conditions of supervision.[6] But Sections (11)(a), 12(a), and 12(c) to Article 42.12 afford the judge broad discretion in determining exactly when to impose a term of confinement. These statutes can be reconciled. The various provisions that govern when a judge can impose conditions of community supervision under Article 42.12 are specific statutes that trump the general rule set out in Article 42.03, Section 1(b) when applicable.[7]

Now I turn to the majority's reasoning and holding. First, the majority contends that, in *State v. Aguilera,*[8] I, joined by three members of the Court, stated that a trial judge errs when changing, altering, or

---

n. 6. But the Court cites no evidence from the record to support this proposition. Instead, the Court cites defense counsel's argument to the jury that appellant was "going to sell the home" and had "no intention of ever going back to Sandy Harbor." Defense counsel's argument to the jury is not evidence. *See Hutch v. State,* 922 S.W.2d 166, 173 (Tex.Crim.App.1996)(plurality op.)("It is axiomatic that jury arguments are not evidence"). Even if it were, defense counsel's statement does not reflect that appellant had already moved away but that he intended to do so. The trial court's condition ensured that appellant would follow through on this expressed intention.

1. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

2. *Speth v. State,* 6 S.W.3d 530, 532 (Tex.Crim. App.1999).

3. Tex.Code Crim Proc. Ann art. 42.12 § 11(a); *see also* Tex.Code Crim. Proc. Ann. art. 42.12 § 10(a).

4. Tex Code Crim. Proc. Ann art. 42.12 § 12(a).

5. Tex.Code Crim. Proc. Ann. art. 42.12 § 12(c).

6. Tex.Code Crim. Proc. Ann. art. 42.03 § 1(b).

7. *See Ex parte Wilkinson,* 641 S.W.2d 927, 931 (Tex.Crim.App.1982) (discussing the doctrine of in pari materia).

8. 165 S.W.3d 695 (Tex.Crim.App.2005).

modifying a sentence or the conditions of community supervision immediately after a victim allocution. *Aguilera* addressed the propriety of a trial judge's decision to re-sentence a defendant to a lesser term of imprisonment immediately after the victim allocution was read but before the judge adjourned for the day.[9] *Aguilera* did not address the specific provisions that apply to the conditions of community supervision. Those provisions are what distinguish this case from *Aguilera,* and this crucial distinction leads me to urge a different result in this case.

Furthermore, I cannot understand how the members of the Court, who comprised the majority in *Aguilera,* can now champion the majority's position today. The same members of the Court, who said that it is permissible for a judge to lower a defendant's sentence,[10] now disapprove of a judge's decision to add a term of community supervision under similar circumstances. The majority reaches the result today, presumably, based on the view that Article 42.03, Section 1(b) was not raised by the State in *Aguilera.*[11] I disagreed with that view when *Aguilera* was issued; the statute was directly implicated in considering the trial judge's plenary power to modify the defendant's sentence.[12] In the words of Justice Jackson, the majority "changed positions as nimbly as if dancing a quadrille."[13] I find this contradictory stance to be ludicrous.

Finally, the majority contends that the trial judge did not alter or modify the conditions of community supervision because the 180–day confinement term was part of the original judgment, which was signed the same day Johnson was placed on supervision. In making this argument, the majority ignores our case law that says a trial judge's oral pronouncement of a sentence, or suspension of a sentence, controls over a written judgment.[14] Here, the trial judge accepted the jury's recommendation to suspend Johnson's five-year sentence and place him on community supervision. The trial judge told Johnson, in open court, that he was imposing the standard conditions of probation and requiring Johnson to register as a sex offender. After this, the judge heard the victim allocutions. The judge then imposed two additional conditions—that Johnson sell his home and that he serve 180 days in jail. Johnson agreed to the first but objected to the second. By adding the 180–day term of confinement to the conditions of Johnson's supervision, the judge altered or modified the conditions previously announced.

Based on the foregoing reasons, I dissent to the Court's judgment.

**9.** *Id.* at 696.

**10.** *Id.* at 696–703.

**11.** *Id.* at 699 (Cochran, J., concurring).

**12.** *Id.* at 706 (Keasler, J., dissenting).

**13.** *Orloff v. Willoughby,* 345 U.S. 83, 87, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

**14.** *Rodarte v. State,* 860 S.W.2d 108, 109–10 (Tex.Crim.App.1993).