

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-09-00089-CR**
**NO. 02-09-00090-CR**

SHEREE LEANNE APPLIN A/K/A          APPELLANT
SHEREE LEANNE APTLIN

V.

THE STATE OF TEXAS          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Sheree Leanne Applin a/k/a Sheree Leanne Aptlin appeals the trial court's judgments revoking her community supervision. In two points, Applin contends that the evidence is insufficient to establish that she violated terms of her community supervision and contends that trial counsel was ineffective. We will affirm.

## II. BACKGROUND

On September 22, 2008, Applin entered pleas of guilty to both causes involved in this case—driving while intoxicated with felony repetition. As part of her plea-bargain agreements, Applin received seven-year sentences. The trial court probated the sentences for a period of four years, placing Applin on community supervision. Among the conditions of her community supervision, Applin immediately served ten days in the Tarrant County Jail. Her plea-bargain agreements also included that Applin complete 160 hours of community service, pay court costs and a $1,350 fine, and that Applin's driver license be suspended for two years and until she completed the DWI repeat offender program. Other conditions of her community supervision included that Applin abstain from illegal substances, attend substance abuse treatment, and pay a monthly probation supervision fee. The terms of her plea-bargain agreements also allowed for "other conditions to be set by [the trial] court."

Three weeks after being placed on community supervision—on October 13, 2008—the trial court supplemented Applin's community supervision conditions and ordered her to serve fourteen days' confinement in the Tarrant County Jail. Again, on December 29, 2008, the trial court supplemented her community supervision conditions by jailing her for 156 days. On February 13, 2009, the State filed its petitions seeking to revoke Applin's community supervision. In the three-page petitions, the State alleged that Applin violated the

2

conditions of her community supervision by testing positive through urinalysis on December 12, 2008, for hydrocodone, hydromorphone, and codeine; by testing positive for THC on September 30, 2008; by failing to attend substance abuse treatment on October 7, 2008, and December 20, 2008; and by failing to pay her probation supervision fees in October and December 2008.

At the hearing on the State's revocation petitions, Applin pleaded "not true" to all allegations. Ermelindo Rolon, Applin's community supervision supervisor, testified that Applin failed to attend substance abuse treatment in October and December 2008, and that Applin failed to pay her supervision fees in October and November 2008. Rolon also testified that Applin tested positive for codeine, hydrocodone, hydromorphone, and THC. Rolon said that Applin "did not take probation seriously" and that she had "a nonchalant kind of attitude." According to Rolon, the trial court amended Applin's community supervision in October 2008 to include the fourteen days' jail time because Applin missed one of her outpatient support appointments. When asked whether the jail time was in relation to Applin having tested positive for THC, Rolon said that at the time of the October condition, he was not aware that Applin had tested positive. Rolon said, however, that he was aware of Applin testing positive for THC at the time the trial court imposed the December jail-time condition. Rolon testified that Applin did not have good family support and that Applin's "partner recovery," Applin's mother, was a poor influence on Applin. The State questioned Rolon

3

about Applin's having tested positive for codeine, hydrocodone, and hydromorphone. Specifically, the State asked Rolon if Applin tested positive "in one dose or separate doses?" As Rolon began to answer, defense counsel objected that Rolon was testifying to what someone at a laboratory had told him and thus his statement would be hearsay. Defense counsel qualified his statement by stating that although the parties had stipulated that these drugs had been detected in Applin's urine, he would not stipulate to the out-of-court statement regarding "one dose or separate doses." The trial court sustained the objection. Rolon said that Applin admitted to having taken her mom's cough syrup, which contained the codeine, hydrocodone, and hydromorphone.

Lori Applin, Applin's mother, testified that Applin took cough syrup when she was sick that had been prescribed to either Lori or Lori's husband, that Lori's husband administered the cough syrup to Applin, and that Applin never saw the bottle. Lori said that no one was aware at the time Applin was sick that the prescription cough medicine contained codeine, hydrocodone, or hydromorphone. Applin's father also testified at the hearing and admitted he was aware that Applin had tested positive for codeine, hydrocodone, hydromorphone, and THC. He said that he was also aware that Applin did not finish her substance abuse treatment. He said that Applin's failures were due to her being "probably a little careless" and that he would be willing to be Applin's partner in recovery if the trial court continued Applin's community supervision.

4

Applin testified that she had smoked marijuana seven days after the trial court placed her on community supervision. She said that she had missed one substance abuse session because she had mistaken which day she was to attend, but that she missed another because the counselor "refused" her. She said that she did not intentionally consume codeine, hydrocodone, or hydromorphone. And Applin also testified that she had failed to pay her fees, but that she did not have the money because she had lost her job while she was serving the jail time in October.

The trial court found that Applin violated each of the State's allegations except for failure to pay the October fee and revoked Applin's community supervision. The trial court sentenced Applin to the seven years' confinement in each of the two cases originally pleaded to. The sentences are to run concurrently. This appeal followed.

### III. REVOCATION OF COMMUNITY SUPERVISION

In her first point, Applin contends that the trial court abused its discretion by revoking her community supervision. Applin argues that the evidence is insufficient to prove that she violated terms of her community supervision. The crux of Applin's argument is that the trial court had already subjected her to confinement for the alleged violations of her community supervision; thus, citing double jeopardy, Applin contends that the trial court erroneously used the "same violation as a basis for revoking her probation and sentencing her to the

5

penitentiary" as it did when it imposed its additional conditions in October and December 2008.  Therefore, Applin argues, the trial court now seeks to "punish [Applin] yet again for the same violation[s]."  We disagree.

A.    **Community Supervision Conditions**

"Community supervision" is the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.  *See Rohret v. State*, 41 S.W.3d 218, 219–20 n.4 (Tex. App.—Dallas 2001, no pet.).  Under this paradigm, and like in this case where the plea-bargain agreement called for community supervision allowing for conditions to be set by the trial judge, the trial judge determines the conditions of community supervision and may alter or modify the conditions at any time.  *See* Tex. Code Crim. Proc. art. 42.12, § 11(a) (Vernon 2004).  The trial judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.  *Id.*  An award of community supervision is a quasi-contractual privilege, not a right.  *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  And the terms or conditions of community supervision are terms of the agreement entered into between the trial court and the defendant.  *Id.*  These

6

terms are capable of being changed by the trial court in the course of the community supervision time frame. *Id.* at 534–35.

The conditions of community supervision may include a number of requirements, including submitting a defendant in a felony case to a term of confinement for no longer than 180 days in county jail. Tex. Code Crim. Proc. art. 42.12, § 12(a); *see also Grodis v. State*, 921 S.W.2d 502, 505–06 (Tex. App.—Fort Worth 1996, pet. ref'd) (recognizing that a trial judge has the authority to impose jail time as an additional condition of probation even in a plea-bargain case). Thus, the trial court retains authority to impose confinement in jail as a condition of community supervision "at any time during the supervision period." *Johnson v. State*, 286 S.W.3d 346, 351 (Tex. Crim. App. 2009). And unless prohibited by law, the trial judge "may do so for any reason and perhaps for no reason." *Id.* Even if community supervision is revoked, the trial judge is not required to give a defendant credit for time spent in confinement as a condition of community supervision; whether to do so is within the trial court's discretion. Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (Vernon Supp. 2004–05); *Ex parte Walker*, 150 S.W.3d 429, 431–32 (Tex. Crim. App. 2004).

In this case, there are no specific fact findings as to why the trial court imposed the jail-time conditions in October and December 2008. But even assuming that the infractions that led to these conditions of community supervision serve in part as the same foundation that supports the State's

7

petition for revocation, we conclude that there is no double jeopardy issue. Indeed, under Texas law a trial court can impose jail-time conditions "for any reason and perhaps for no reason" at "any time during the supervision period" and not credit that time to a sentence suspension that is eventually revoked; thus, we hold that a trial court does not err by imposing conditions of jail time for violations of community supervision and also finding true that these violations occurred for revocation purposes. *Johnson*, 286 S.W.3d at 351; *see U.S. v. Whitney*, 649 F.2d 296, 298 (5th Cir. 1981) (declining to extend double jeopardy clause protections to parole and probation revocations proceedings); *Ex parte Peralta*, 87 S.W.3d 642, 644–46 (Tex. App.—San Antonio 2002, no pet.) (reasoning that probation revocation proceedings are not designed to punish a criminal, but to determine whether probationer has violated conditions of parole; thus, double jeopardy does not apply to such proceedings); *Salinas v. State*, 1 S.W.3d 700, 701–702 (Tex. App.—Amarillo, pet. ref'd) (noting that neither probation nor parole revocation hearings constitute a stage of a criminal prosecution for double jeopardy purposes). To do so would thwart the purpose behind community supervision; namely, "restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant" while at the same time suspending the defendant's true sentence for the crime that they have actually been convicted of. Tex. Code Crim. Proc. art. 42.12, § 11(a). Thus, the

question we will next address is whether the trial court abused its discretion when it revoked Applin's community supervision.

## B.     Sufficient Evidence to Support Revocation

We review an order revoking community supervision under an abuse of discretion standard. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Cherry*, 215 S.W.3d at 919. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Cherry*, 215 S.W.3d at 919. If the State fails to meet its burden of proof, which in this instance is by preponderance of the evidence and not beyond a reasonable doubt, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. Our law is well settled that a defendant's voluntary judicial confession to violating the terms of her community supervision is, by itself, sufficient to support the decision to revoke. *See, e.g., Wade v. State*, 83 S.W.3d 835, 839–40 (Tex. App.—Texarkana 2002, no pet.) (defendant's confession to failing to pay fines and fees, without

9

explanation of inability to pay, was sufficient to support trial court's decision to revoke community supervision). Furthermore, the decision whether to continue or revoke community supervision is within the trial court's discretion. *Id.*

In this case, Applin's community supervision supervisor testified that Applin had tested positive for codeine, hydrocodone, hydromorphone, and THC: all violations of Applin's community supervision conditions. The supervisor also testified that Applin failed to attend the classes described in the State's petitions to revoke and that Applin had failed to pay multiple fees. Applin herself admitted that she smoked marijuana and that she had taken prescription cough syrup. She also admitted that at least one of the violations, missing her support group meeting in October, was her "fault." Viewing the evidence in the light most favorable to the trial court's ruling and recognizing that the State need only prove that Applin violated her conditions by a preponderance of the evidence as to any one condition imposed in the community supervision arrangement, we hold that the trial court did not err by finding Applin had violated conditions of her community supervision. Thus, we overrule Applin's first point.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

In her second issue, Applin contends that her trial counsel was ineffective because he did not object to multiple statements that appear to be hearsay; he stipulated to the contents of a drug test; and he did not "make any meaningful

argument [on her behalf]."  We hold that the record does not support the claim that Applin's representation at the revocation hearing was ineffective.

We apply a two-pronged test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001).  To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63.  There is no requirement that an appellate court approach the two-pronged inquiry of *Strickland* in any particular order or even address both components of the inquiry if the defendant makes an insufficient showing on one component.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel's representation is

11

highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

In this case the record is insufficient to establish that trial counsel failed to conduct himself within the wide range of reasonable representation. It appears to this court that counsel's strategy was to appeal to the trial court's discretion and ask the court to assign to Applin a new partner in recovery—her father—and to continue community supervision rather than revoke the suspension of her sentences. Given the evidence that Applin had violated multiple conditions of her community supervision, this court cannot say that counsel's tactic was not reasonable under the circumstances. We hold that Applin has failed to overcome

12

the presumption that trial counsel's actions were consistent with sound trial strategy. *See Thompson*, 9 S.W.3d at 813–14. We overrule Applin's second point.

## V. CONCLUSION

Having overruled both of Applin's points, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

MCCOY, J. concurs without opinion.

PUBLISH

DELIVERED: April 14, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00089-CR
## NO. 02-09-00090-CR

SHEREE LEANNE APPLIN A/K/A                                    APPELLANT
SHEREE LEANNE APTLIN

V.

THE STATE OF TEXAS                                                STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

I cannot join the majority opinion for several reasons.  I respectfully dissent

from the majority's statements that

> even assuming that the infractions that led to these conditions of
> community supervision [periods of incarceration] serve in part as the
> same foundation that supports the State's petition for revocation, we
> conclude that there is no double jeopardy issue.  Indeed, under
> Texas law a trial court can impose jail-time conditions "for any
> reason and perhaps for no reason" at "any time during the
> supervision period" and not credit that time to a sentence
> suspension that is eventually revoked; thus, we hold that a trial court
> does not err by imposing conditions of jail time for violations of

community supervision and also finding true that these violations occurred for revocation purposes.[1]

I do not understand what this means. Does it mean that it is permissible to confine a probationer for no reason because she will not get credit against her sentence anyway? When a person is placed on community supervision, that person does not remove herself from constitutional protections to become a person subject to the whims and caprices of the trial judge.[2] In determining whether a person previously placed on community supervision will suffer incarceration through revocation, a trial court is bound by constitutional guarantees of due process:

> The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. Probationers have an obvious interest in retaining their conditional liberty. The State also has an interest in ensuring that revocation proceedings are based on accurate findings of fact and the informed exercise of discretion, which avoid the unnecessary interruption of a successful effort at rehabilitation and provide for the safety of the community. In *Morrissey v. Brewer*, the United States Supreme Court held that due process applies to parole revocations. Commenting on the condition of one on parole, the Court noted:
>
>> Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only

---

[1]Majority op. at 7–8.

[2]*See Ex parte Dangelo*, Nos. 02-09-00266-CR, 02-09-00268-CR, 2010 WL 5118650, at *3 (Tex. App.—Fort Worth Dec. 16, 2010, pet. filed) (op. on reh'g).

2

if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

In *Gagnon v. Scarpelli*, the Supreme Court held that the procedures outlined in *Morrissey* for parole revocation should also apply to probation proceedings.

To meet the requirements of due process, the final revocation of probation must be preceded by a hearing, where the probationer is entitled to written notice of the claimed violations of his probation, disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses and documentary evidence, a neutral hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation. As we said in *Ex parte Hale*, "the Constitution of our country has been interpreted to protect persons who are released (on community supervision), from reincarceration without due process of law."

Accordingly, due process requires that reincarceration occur only after the disclosure of evidence against the defendant. Within this right to disclosure of evidence afforded by due process, we can infer the requirement that revocation may not occur when it is based solely on perjured testimony. Because habeas review is appropriate for denials of fundamental or constitutional rights, the applicant's claim that his community supervision was revoked solely on perjured evidence, and therefore without due process of law, is cognizable under the habeas jurisdiction of this court.[3]

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."[4] The touchstone of due process is fundamental fairness.[5] Accordingly, no

---

[3]*Ex parte Carmona*, 185 S.W.3d 492, 495–96 (Tex. Crim. App. 2006) (citations omitted).

[4]U.S. Const. amend. XIV.

[5]*Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S. Ct. 1756, 1763 (1973); *Webb v. State*, 161 Tex. Crim. 442, 278 S.W.2d 158, 160 (1955).

3

State may deprive any person of the conditional liberty created by community supervision unless the State employs procedures that are fundamentally fair.[6] In particular, where, as in Texas, the factfinder, if it finds a violation of the conditions of community supervision, nevertheless has discretion to continue the community supervision, the probationer "is entitled [by due process] to an opportunity to show not only that he did not violate the conditions [of his probation], but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition."[7]

It is well established that

Texas law gives a trial court "broad discretion" in creating community supervision conditions. Specifically, "[t]he judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." But the court's discretion is limited. If a trial court imposes an invalid condition, an appellate court may delete it from the trial court's judgment.

A condition of probation is invalid if it has *all three* of the following characteristics:

(1) it has no relationship to the crime;

(2) it relates to conduct that is not in itself criminal; and

(3) it forbids or requires conduct that is not reasonably related to the future criminality of the defendant or does not serve the statutory ends of probation.

A community supervision "condition is not necessarily invalid simply because it affects [the defendant's] ability to exercise

---

[6]*Black v. Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 2257 (1985).

[7]*Id.* at 612, 105 S. Ct. at 2258.

4

constitutionally protected rights." A condition that is "reasonably related to the purposes of probation" is permissible. "Reasonably related" hinges on three factors: "(1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement."[8]

As this court has explained, "[T]he trial court's broad authority to create community supervision terms does not extend to imposing terms that violate a defendant's constitutional rights as balanced with the goals of the defendant's probation."[9] Surely liberty is a fundamental constitutionally protected right. When a trial court amends a defendant's conditions of community supervision, the trial court must act within constitutional boundaries. When a trial court orders incarceration as a condition of community supervision, the record must show that the condition is reasonably based on the conduct of the defendant and the aims of community supervision and that the defendant's constitutional rights of notice, rebuttal and explanation, objection, and representation by counsel were not abridged.

When a trial court imposes conditions of community supervision, whether as original conditions or pursuant to amendment, a defendant must be afforded the opportunity to challenge them. If the defendant is not given an opportunity to

---

[8]*Briseño v. State*, 293 S.W.3d 644, 647–48 (Tex. App.—San Antonio 2009, no pet.) (citations omitted).

[9]*Dangelo*, 2010 WL 5118650, at *3 (citations omitted).

5

object when the condition is imposed, there is no forfeiture of the complaint, and the defendant may raise that complaint for the first time on appeal.[10]

A defendant is entitled to be represented by counsel at sentencing because substantial rights of a defendant can be affected at sentencing.[11]   It follows, then, that a defendant is entitled to be represented by counsel when conditions of community supervision are amended to make them more onerous because the defendant's substantial rights of liberty, payment of restitution, or preservation of a complaint that may invalidate the amendment or affect the trial court's ability to revoke community supervision are affected.[12]

This court has previously addressed the issue of revocation of community supervision on a ground already heard and ruled on by the trial court before the revocation hearing.  In *Rains v. State*, we held that it was a denial of due process to hear an allegation of a violation of community supervision and continue the defendant on community supervision but later revoke the community supervision on the basis of the violation previously considered.[13]   We quoted *Rogers v. State*,[14] an opinion of the Texas Court of Criminal Appeals,

---

[10]*Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003).

[11]*Casey v. State*, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996).

[12]*See id.*

[13]*Rains v. State*, 678 S.W.2d 308, 310 (Tex. App.—Fort Worth 1984, pet. ref'd).

[14]640 S.W.2d 248 (Tex. Crim. App. 1981).

6

The probationer who has been returned to probation after a hearing regardless of the procedural label, retains the valuable liberty of probation and the due process protection of the Fourteenth Amendment (of the United States Constitution) and (article I) Section 19 (of the Texas Constitution).

This protection includes the fundamental requirement that the probation, recently returned, not be taken away arbitrarily . . . [.]  It would be the epitome of arbitrariness for a court first to conduct a hearing on alleged violations and exercise its discretion to return the probationer to probation (whether by a '*continuance* of the *hearing*' or by a '*continuance* of the *probation*'), and then decide several months later to exercise its discretion in the opposite fashion by revoking the probation without any determination of a new violation. (Emphasis added.)[15]

The *Rogers* court had held

that by his actions and oral instructions modifying the conditions of probation, the trial judge exercised his discretion and determined to continue appellant's probation on June 26, 1980; having done so, he was without authority to revoke appellant's probation on September 26, 1980 in the absence of allegations and proof of a subsequent violation.  Appellant was therefore denied his right to due process of law.  The order revoking his probation is set aside and the cause is remanded.[16]

Since article 42.12, section 21(b) of the code of criminal procedure was clarified, it is undisputed that when a violation of a condition of community supervision is alleged and heard by the trial court, there are only four things a trial court can do.  Article 42.12, section (21)(b) provides,

---

[15]*Rains*, 678 S.W.2d at 310 (quoting *Rogers*, 640 S.W.2d at 252).

[16]*Rogers*, 640 S.W.2d at 251.

7

At any time during the period of community supervision the judge may issue a warrant for violation of any of the conditions of the community supervision and cause the defendant to be arrested. Any supervision officer, police officer or other officer with power of arrest may arrest such defendant with or without a warrant upon the order of the judge to be noted on the docket of the court. A defendant so arrested may be detained in the county jail or other appropriate place of confinement until he can be taken before the judge. Such officer shall forthwith report such arrest and detention to such judge. If the defendant has not been released on bail, on motion by the defendant the judge shall cause the defendant to be brought before the judge for a hearing within 20 days of filing of said motion, and *after a hearing without a jury, may either continue, extend, modify, or revoke the community supervision.*[17]

Once the trial court has either continued, extended, modified, or revoked the community supervision, the trial court is precluded from further action regarding that allegation. The trial court may not subsequently revoke community supervision based on the allegation that previously resulted in the trial court's continuing, extending, or modifying community supervision.

In the case now before this court, although we do not know why the trial court imposed the jail-time conditions in October and December 2008, the majority bases its holding on the trial court's discretion to amend the conditions of probation to impose jail time at any time during the supervision period "for any reason and perhaps for no reason."[18] And, according to the majority, it is of no import that Appellant was revoked for the very reasons for which she was incarcerated in October and December because she is not entitled to credit for

---

[17]Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b) (Vernon Supp. 2010) (emphasis added).

[18]Majority op. at 8.

8

the time that she was incarcerated as a condition of community supervision. Apparently it is also of no import that Appellant's community supervision was revoked while she was in jail for the December incarceration condition. What new violation did she commit while she was in jail? Apparently, that also is of no import because under the majority's holding, despite contrary and controlling precedent, the trial court can act as arbitrarily and capriciously as the trial court chooses.

Respectfully, I suggest that the majority misunderstands the concept of due process. A defendant is entitled to due process whenever his or her liberty is in jeopardy. Did the trial court afford Appellant a hearing before the October and December incarcerations? Did she have notice of the accusations against her? Was she given notice of the hearings so that she could be present at any hearings? Did she have counsel?

In arguing that the trial court abused its discretion in revoking her community supervision, Appellant has couched her arguments as double jeopardy violations and insufficiency claims. If the majority bases its decision on the fact that Appellant calls her argument a double jeopardy as opposed to a due process violation, the majority allows form to triumph over substance and, additionally, sets the stage for a claim of ineffective assistance of counsel.

Appellant also raises a sufficiency claim, and she argues here, as she did below, that she was unable to pay the November community supervision fees

9

because she had lost her job when she was incarcerated in October.  The law is well established in Texas that

> [a]t a community supervision revocation hearing, the inability to pay restitution is an affirmative defense for a defendant to prove. Once the issue of inability to pay is raised, the burden of proof shifts to the State to prove that appellant's failure to pay was intentional.[19]

The State offered no evidence to challenge Appellant's testimony of inability to pay.  The State must prove its allegations, including ability to pay, by a preponderance of the evidence.

Additionally, the majority states that Appellant cannot claim credit for the time that she was in jail as a condition of community supervision because the trial court is not required to award the credit, relying on article 42.03, section (2)(a) of the code of criminal procedure.[20]  But the trial court gave her credit for time served:  "They do run concurrently, and *you get credit on the sentences for the time that you have already served in custody.*"  It is well established that in a criminal case, unlike a civil case, the oral pronouncement of sentence controls over the written judgment:

> A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement.  When the

---

[19]*Greathouse v. State*, 33 S.W.3d 455, 458 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (citations omitted).

[20]*See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (Vernon Supp. 2010).

oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls.[21]

For all the reasons discussed above, I must respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  April 14, 2011

---

[21]*Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (citation omitted).

11