**Opinion issued May 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NOS. 01-12-00726-CR, 01-12-00727-CR

———————————

**NICODEMO SEGURA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1326615, 1326616**

**MEMORANDUM OPINION**

A jury found appellant, Nicodemo Segura, guilty of the offenses of possession with intent to deliver cocaine weighing more than four hundred grams[1] and possession with intent to deliver methamphetamine weighing more than four hundred grams.[2] The jury assessed his punishment at confinement for twenty years in the cocaine case and twenty-seven years in the methamphetamine case, with both sentences to run concurrently. In his sole issue, appellant contends that he received ineffective assistance of counsel at trial.

We affirm.

**Background**

Houston Police Department ("HPD") Officer R. Rodriguez testified that on November 8, 2011, he received information concerning a suspect that possessed "large amounts of cocaine and crystal meth." He followed up on the information and contacted Jose Plancarte, with whom he negotiated, over a telephone call, to purchase four kilograms of cocaine and two pounds of methamphetamine. On November 9, Rodriguez briefly met with Plancarte in a parking lot, and Plancarte

---

[1]     *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(5), 481.102(3)(D), 481.112(a), (f) (Vernon 2010); trial cause number 1326615, appellate cause number 01-12-00726-CR.

[2]     *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(5), 481.102(6), 481.112(a), (f) (Vernon 2010); trial cause number 1326616, appellate cause number 01-12-00727-CR.

2

stated that he would return later with the requested narcotics. Appellant was not at Rodriguez's first meeting with Plancarte.

One of the officers conducting surveillance of Plancarte reported that a person driving a white Jeep later placed a laptop case into Plancarte's blue pickup truck. Shortly thereafter, Plancarte drove his truck, with appellant sitting in the passenger's seat, back into the parking lot. Officer Rodriguez approached the passenger side window of the truck, Plancarte told him that the narcotics were in the back seat, and Rodriguez then entered the truck, but had difficulty opening the case. Appellant then said, "Let me get it open," and he reached back to help open it. Rodriguez saw both the cocaine and methamphetamine packaged in the case, and he asked Plancarte and appellant, "Is it good?" Both men replied, "Of course, yes, it's good." Rodriguez told them that his "money man" was around the corner, and he could complete the purchase there. After Plancarte and appellant drove away from the parking lot, Rodriguez and the officers conducting surveillance stopped and arrested both men.

On cross-examination, Officer Rodriguez admitted that he did not include the fact that appellant had spoken during the transaction in his offense report. And he conceded that, because the narcotics were contained in the case, "any individual who was actually just sitting in that car wouldn't actually have knowledge of what was inside that [case] unless they looked inside." Rodriguez then explained that

3

methamphetamine has a distinctive smell that he detected when he opened the truck door.

HPD Officer A. Duncan testified that on November 9, 2011, he was dispatched to assist Officer Rodriguez in conducting an arrest. When he arrived at the scene, Duncan took photographs of the evidence recovered from Plancarte's truck. Among the items was a handgun seized from underneath the passenger seat. Duncan also field-tested the narcotics recovered from the truck, and the test confirmed the narcotics consisted of cocaine and methamphetamine. Ahtavea Baker, a criminalist in the controlled substance section of the HPD Crime Laboratory, testified that she tested the narcotics recovered from Plancarte's car. The methamphetamine weighed 904.7 grams, and the cocaine weighed 3,865.5 grams.

Appellant testified that he and Plancarte had been friends from the time when they both lived in Mexico. He explained that Plancarte had invited appellant to his automobile repair shop to offer him a job as an assistant mechanic. And, on November 9, 2011, appellant, bringing his wife and daughter, followed Plancarte to the shop. When appellant got into Plancarte's truck, Plancarte drove them to a car wash, where a person handed Plancarte a laptop case. Appellant did not recognize the person or look inside the case, and he thought that the person had given Plancarte a computer. Plancarte then walked across the street and spoke to a

4

man, later identified to be Officer Rodriguez, in a white truck. Rodriguez later approached Plancarte's truck, and Plancarte directed him to the case in the back seat. After Rodriguez opened the case, he agreed to meet Plancarte at a nearby stereo shop. Appellant noted that he did not speak with Rodriguez.

## Standard of Review

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Strickland* generally requires a two-step analysis in which an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 687–94, 104 S. Ct. at 2064–68; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. Appellant has the

5

burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

A failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Moreover, allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 814; *Bone v. State*, 77 S.W.3d 828, 835 & n.13 (Tex. Crim. App. 2002). When the record is silent, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See id.*

## Ineffective Assistance of Counsel

In his sole issue, appellant argues that his trial counsel denied him effective assistance because he failed to "object to the State's leading questions and inadmissible hearsay evidence." Specifically, appellant asserts that his trial counsel did not object to Officer Rodriguez's testimony regarding Plancarte's statements to him during the transaction.

Here, appellant did not move for a new trial, and there is nothing in the record to indicate why trial counsel did not object to Officer Rodriguez's testimony. Appellant nevertheless asserts that "there was no excuse for the failures to object and then move for a mistrial" and "[t]here is no reasonable trial strategy that would permit such harmful, inadmissible evidence to be introduced to the jury without objection."

Appellant cites to several places in the record that he asserts reveal "inadmissible and damaging" testimony. For example, appellant complains of the following testimony from Officer Rodriguez:

> Okay. In talking to Mr. Plancarte, I negotiated a large amount or multi kilos of cocaine, the purchase of multi kilos of cocaine in addition to 2 pounds of ice. I told him that we needed to meet him so that we could, you know, talk about this in person. I would like to see him in person, and he agreed. Went to a location. We met in a parking lot. We talked briefly. And he told me that he would return later on with the product that I requested.

Later, Rodriguez testified that Plancarte told him that "he had the ice or the meth was there, but he was still waiting on the 4 kilos of cocaine," he would "find out" if he had enough cocaine, he "was getting the 4 kilos . . . on the south side of the street from a buddy of his," and Rodriguez could retrieve the narcotics from the back seat of the truck. Finally, Rodriguez testified,

> The plan was for them to get out on the street and have a marked unit stop the vehicle. But as it turns out, they pulled into a business and backed into a stereo shop, which they suggested, "Hey, look. I know

7

a stereo business there. Just call him over there and we'll make the exchange." I said, "Okay."

Trial counsel did object on hearsay grounds when Officer Rodriguez testified that both Plancarte and appellant told him that the narcotics consisted of "good stuff," but the trial court overruled the objection. And appellant also complains that Rodriguez testified that the officers conducting surveillance informed him that Plancante "might be heading your way."

Because the record is silent as to trial counsel's reasons for not objecting to the above evidence, we will affirm the trial court's judgment if there is a possibility that counsel's conduct could have been grounded in legitimate trial strategy. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). At trial, most, if not all, of the above evidence was admissible under exceptions to the rule precluding the admission of hearsay. *See* TEX. R. EVID. 801(e)(2), 803(24). Moreover, appellant's defensive theory at trial was that he only accompanied Plancarte to the transaction because he thought that he would be offered employment and the transaction was negotiated entirely by Plancarte. Appellant testified that he did not see the narcotics or know that a narcotics transaction was taking place. Thus, trial counsel could have decided that an objection to the testimony would have been futile or it could have been a reasonable trial strategy. *See Garza*, 213 S.W.3d 347–48 (holding that counsel's decision not to object to hearsay testimony could have been part of

reasonable trial strategy); *Applin v. State*, 341 S.W.3d 528, 534–35 (Tex. App.—Fort Worth 2011, no pet.) (holding that court could not conclude that trial counsel's decision not to object to hearsay testimony was unreasonable). And although appellant now asserts that "the requisite amount of contraband" was "the critical issue" in the case, he, at trial, contended only that he had no knowledge of the transaction. He did not claim that he possessed less than four hundred grams of either cocaine or methamphetamine.

We cannot conclude that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440. Accordingly, we hold that appellant has not satisfied the first prong of *Strickland*.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).

9